JOHN J. MARSH & another *vs.* EDWARD A. HAMMOND.

If a messuage recovered on a writ of entry was, at and after the time when the demandant's title accrued, subject to a right of homestead in the demandant's grantor and his family, and occupied in part by such grantor's wife under a claim of the homestead right without the same being set off, the rentable value of that part during her said occupation is not to be included in estimating, under the Gen. Sts. c. 134, § 15, "the clear annual value of the premises" for which the tenant in the action is liable as rents and profits.

Land demanded on a writ of entry was subject to a lease and a mortgage when the demandant's title accrued. The demandant forbade the lessee to pay rent to the tenant in the action; and the lessee refused to do so. The mortgagee entered for the purpose of foreclosure and advertised the land for sale under a power in his deed. The demandant and the lessee thereupon agreed with him that if he would not proceed with the sale the rents should be paid to him; and he withdrew the advertisement. The lessee remained in occupation, but paid no rent to any one; and the demandant, after recovering judgment, sold the land to him, subject to the mortgage, for a sum which he paid "in full for all rent or other claims upon him for the occupation" of the land. *Held*, that the demandant was estopped to recover damages for the rents and profits of the land from the tenant in the action.

WRIT OF ENTRY, dated June 20, 1864, by the assignees of the estate of George W. Lee in insolvency, to recover four parcels of land in Haverhill. Plea, *nul disseisin.* On June 30, 1866, judgment was entered for the demandants; (11 Allen, 483;) and on November 24, 1866, a writ of possession was issued in their favor, and by agreement of the parties an assessor appointed " to ascertain the sums due to the demandants for the rents and profits of the demanded premises, and report the same." The portions of his report relating to two of the parcels, known respectively as the " Lee place" and the " Kimball farm," (which are the only portions now material,) were substantially as follows:

" The demandants claimed rents, profits and damages for the occupation and withholding by the tenant of the several parcels from June 1863 to November 1866."

" The assessor finds and reports the following facts in relation to the eastern half of the Lee place: It was admitted that in 1861 George W. Lee, the tenant's grantor, had and occupied a homestead under the homestead exemption laws. When said Lee made the mortgage deeds to the tenant, which were in controversy in this action, [and under which the tenant had claimed his title,] his wife did not join with her said husband to release the said rights of homestead and her inchoate rights of dower. The assignees took possession of all of said Lee's real estate in 1861, but Mrs. Lee continued to occupy the eastern half of the said home place, and refused to pay rent or to give up the occupation, claiming to occupy the same under the homestead exemption laws. The tenant entered in 1863 into all the real estate mortgaged to him, in the presence of two witnesses, and put his entry upon record; but Mrs. Lee made the same claim against him that she made against the assignees, and continued to occupy till November 1866, and never paid rent to the tenant. The part of the house occupied by her was worth more than $800; but how much more there was no satisfactory evidence before the assessor. Neither the assignees, nor the tenant, nor other person took any steps to set out the homestead according to the statute. After judgment for possession entered in this

case, in November 1866, the assignees made a full and final settlement with Mrs. Lee and paid her $5000 for her release of homestead and dower in this and other real estate of said Lee ; but whether compensation for her occupation up to that time entered into the settlement did not appear from the evidence. Upon these facts, the assessor determines as matter of law that the tenant was not liable to pay for rents, profits and damages for the eastern half of the house so occupied by Mrs. Lee under the homestead exemption laws. The assessor finds that the rents, profits and damages for which the tenant is liable, if in law he is liable, are the sum of $450."

" The assessor finds and reports the following facts in relation to the Kimball farm : At the date of Lee's mortgage to the tenant, and at the date of the appointment of these assignees, John S. Lamprey was in the occupation of the farm under a written lease from Lee for a term of years at the annual rent of $200, and also under some kind of an agreement of sale to said Lamprey. The tenant entered under his mortgage in June 1863, and notified Lamprey to pay rent to him. The assignees forbade Lamprey to pay rent to the tenant, and Lamprey refused to pay. In the winter of 1864 the tenant seized the hay upon the farm, and Lamprey paid $200 (the rent of 1863) to the tenant; which sum is assessed against him. Afterwards Hazen Kimball, who held a first mortgage upon the farm, entered under his mortgage to foreclose the same, and notified Lamprey to pay the rent to him. He at the same time advertised the farm for sale under a power of sale contained in said mortgage. Thereupon the assignees and Lamprey agreed with Kimball that, if he would not sell the farm under his mortgage, the rent or interest should be paid to him by them. The advertisement was withdrawn, but the record of possession to foreclose continued in force. The tenant received no rent for the farm except the $200 aforesaid. Lamprey remained in occupation, but paid no rent or interest to any one. After the assignees took possession under the judgment for possession, in November 1866, they sold the farm to Lamprey for $1000, Lamprey to pay the mortgage and all the interest due thereon to Kimball

The demandants called Lamprey as a witness for them, and he testified that, during his occupation, after June 1863, he spent $2000 in repairing the buildings upon the farm and in cultivating it; that, expecting to purchase it under his agreement with Lee, he expended all the products and crops of said farm upon it; and that it was constantly improving and increasing in value. There was other evidence to the same effect. Lamprey further testified that, if he had paid rent for the farm, and had cultivated it in the ordinary method of a tenant paying rent for a farm, it would not have been worth enough, and could not have been sold for enough, in November 1866, to pay Kimball's mortgage and interest. Lamprey further testified that he understood that the $1000 which he agreed to pay to the assignees was in full for all rent or other claims upon him for the occupation of the farm, and that neither the assignees or the tenant had any further claim upon him for rent since 1863. The assessor determines as matter of law, upon these facts, that the tenant is not liable for the rents of the Kimball farm beyond the sum of $200, which is already assessed against him. If he is in law liable, then the assessor finds that he is liable in the sum of $500."

*J. J. Marsh*, for the demandants.

*D. Saunders*, for the tenant.

MORTON, J. Two questions of law are raised in this case.

1. The assessor ruled that, upon the facts found by him, the tenant was not liable for rents and profits of the half of the house occupied by Mrs. Lee under the homestead exemption laws. This ruling was correct. Section 15 of *c.* 134 of the General Statutes provides that the rents and profits for which the tenant is liable shall be " the clear annual value of the premises for the time during which he was in possession thereof," deducting taxes and assessments paid by him and the necessary expenses of cultivating the land or of collecting the rents and profits of the premises. This does not make the tenant liable for the gross rentable value of the premises, but for their annual value free from charges and deductions. *Pelham* v. *Middleborough*, 4 Gray, 57.

In determining this value, regard must be had to the nature and extent of the estate of the tenant, and the character of his possession. If the estate in controversy is an absolute one, free from charge and incumbrance, the gross rentable value of the whole estate is a fair test and measure of its clear annual value; but if it is a qualified or limited one, and subject to a charge or claim which impairs its rentable value, the rule is different. Thus, suppose the premises in question had, before the mortgage, been leased for a term of years, and the rent paid in advance; while the lease continued, the clear annual value of the premises claimed by the demandants and constructively occupied by the tenant would be little or nothing. In the case at bar, the demandants were entitled to, and the tenant was in possession of, an estate subject to the right of homestead exemption in favor of the insolvent debtor and his family, and not an absolute estate. Mrs. Lee being in possession, and occupying the house as a homestead, neither of them had a right of exclusive possession as against her, no steps having been taken to have her homestead set off to her. Until this was done, she remained rightfully in possession, her relation to the assignees, or to the mortgagee who had entered to foreclose, being substantially that of a tenant in common. *Silloway* v. *Brown*, 12 Allen, 30. The claim of a homestead asserted by Mrs. Lee diminished the clear annual value of the house to the extent of her claim and occupancy, and therefore the tenant is not liable for the rent of the part occupied by her. This view renders it unnecessary to consider the effect of the settlement made by the demandants with Mrs. Lee.

2. The ruling of the assessor, that the tenant is not liable for the rents of the Kimball farm beyond the amount received by him, was correct, upon several grounds. The acts of the demandants themselves prevented the tenant from receiving any part of the rents now claimed, and they are estopped to claim them against him. Kimball, the first mortgagee, having entered to foreclose, had a superior right to the rents, and received them, or had the benefit of them, by virtue of an arrangement with the demandants and Lamprey. And further, it appears

that the assignees have made a full settlement with Lamprey, and thus have received the benefit of these rents, and cannot now claim them of the tenant.

The result is, that judgment must be entered for the amount found by the assessor to be due, with interest.

*Ordered accordingly.*