MARY F. SISSON & others *vs.* HARRIET E. TATE & another.

After a decree, in a suit in equity to redeem an estate from a mortgage, establishing the plaintiffs' right to redeem, and after a refusal of the defendant's motion to re-open that decision, it is too late to deny the plaintiffs' right to maintain the bill, at the hearing of exceptions to the master's report of the amount due upon the mortgage.

Upon a bill to redeem an estate from a mortgage, brought against one who, besides having the mortgage title, was in possession under a homestead right of less value than the entire estate, and who asserted an unfounded claim of absolute ownership under a foreclosure of the mortgage, *Held*, that the rights of the parties were those of tenants in common, and that the defendant was not liable for his personal occupation of the premises, or for rents received not in excess of his share as owner of the homestead right; and that his right under his homestead title was not affected by his unfounded claim of ownership.

The owner of land having mortgaged it and conveyed the equity to a grantee who assumed the payment of the mortgage debt, afterwards himself reduced that debt. Upon a bill to redeem, brought by the grantee against the former owner's widow, who, after her husband's death, had become the assignee of the mortgage, *Held*, that she was entitled to receive only the amount actually due upon the mortgage, and not the whole amount of the mortgage undiminished by her husband's payments.

BILL IN EQUITY, filed in 1870 by Mary F. Sisson, Harriet C. Pickens and Diana S. Mackintire, and originally brought against Silas H. Fall, averring that Moses F. Tate was seised in fee of the premises described; that January 18, 1854, he mortgaged them to the Warren Mutual Loan and Fund Association to secure the payment of a bond for $1600; that July 27, 1855, he conveyed them by a warranty deed for $2700 to Charles S. Curtis and J. P. Gilson, subject to this mortgage, expressed to be for about $1200, and which they assumed to pay; that Gilson, December 19, 1857, conveyed his half to Curtis, who died seised and possessed thereof, April 16, 1866, and that the complainants were his heirs at law and owners of the estate, subject to the mortgage, and entitled to redeem the mortgage; that the mortgage was assigned, October 17, 1860, to Silas H. Fall, who claimed to hold the premises absolutely. The bill charged that the mortgage was not foreclosed, and prayed for an account, and that the plaintiffs might be admitted to redeem on paying the amount due, and also charged that Fall held the estate for the benefit of Tate or of his wife.

The answer of Fall averred that the mortgage was foreclosed and all right to redeem it barred, and that before the bringing of the bill he had sold and conveyed all his interest in the estate and mortgage to Harriet E. Tate. Thereupon the plaintiffs filed a supplemental bill, making Harriet E. Tate a party. She filed an answer, averring that the mortgage had been foreclosed and the right of redemption barred; and that she derived her title from Fall and not from Tate, except as to her right to dower and homestead, and that she was not the legal representative of Tate or liable upon his covenants.

Upon these answers, issue was joined and the cause heard. It was determined in *Sisson* v. *Tate*, 109 Mass. 230, that the mortgage was not foreclosed. The case was thereupon referred to a master to state the account between the parties. Afterward, Harriet E. Tate moved for leave to file a supplemental answer setting forth that the deed from Tate to Curtis and Gilson was without consideration, and that the premises were the homestead of Tate, and that she did not join in the conveyance. This motion was disallowed. The master reported a large sum as due the plaintiffs from both defendants, over the amount due on the mortgage, as rents and profits of the estate.

To this report the defendants excepted: " 1st. To any accounting after having ascertained that an estate of homestead existed in Tate at the time of the delivery of possession by him to the mortgagees to foreclose." " 2d. If account at this stage be taken, the tenant in common in possession, not having withheld possession from his co-tenant, can be called upon to account only for money actually received."

The plaintiffs excepted " to all evidence, and findings of facts, and rulings of the master as bearing on the question of homestead, and on all questions depending thereon."

The case was reserved by *Ames*, J., for the consideration of the full court upon the master's report and these exceptions. The substance of the report is sufficiently stated in the opinion.

*C. M. Ellis*, for the plaintiffs.

*A. B. Berry*, for the defendants.

WELLS, J.   The plaintiffs derive their title under a deed from Moses F. Tate to Curtis and Gilson, for the consideration named of $2700, "subject to a mortgage for about $1200, which the said Curtis and Gilson assumed to pay as part of the above named consideration." The deed was dated July 27, 1855, and was signed by this defendant, Harriet E. Tate, as wife of said Moses F. Tate, in token of her release of dower; but there was no release of homestead rights. The mortgage was given in 1854 to the Warren Mutual Loan and Fund Association, to secure payment of a bond for $1600. What the relations were between Tate and Curtis and Gilson, in regard to the property, is not disclosed. But the grantees do not appear ever to have taken possession, or to have paid anything upon the mortgage. The possession and control of the property were retained by Tate until his decease in 1863, and since that time by his widow.

In October, 1860, at the request of Tate, the mortgage was assigned to the defendant Fall for $388, which was paid by him; and that sum is found by the master to have been the amount then due. Fall did this, and held the mortgage afterwards, as a "friendly act," for Tate; and in 1870 conveyed his interest in the estate, by quitclaim deed, to Mrs. Tate. It does not appear that the mortgagee, or Fall as assignee of the mortgage, was ever in actual possession, or that anything was ever done towards obtaining foreclosure or possession, except the giving of the certificate for that purpose by Tate, before the assignment of the mortgage to Fall; and that has been held, by the former decision in this case, to have been ineffectual and inoperative.

It having been held that the plaintiffs are entitled to redeem, a decree to that effect has been entered, and a master appointed to state the accounts and ascertain what sum is due on the mortgage. The master reports large amounts due from each of the defendants after satisfying said mortgage debt, treating it as a debt for only $388 in 1860.

The defendants except to the master's report, objecting, " First, to any accounting after having ascertained that an estate of homestead existed in Tate at the time of the delivery of possession by him to the mortgagee to foreclose. Second. If account

at this stage be taken, the tenant in common in possession, **not** having withheld possession from his co-tenant, can be called upon to account only for money actually received."

The defendants claim a homestead estate in Mr. and Mrs. Tate under the St. of 1855, *c.* 238.

The plaintiffs also except to the report, objecting that the question as to a right of homestead is not now open to the defendants, and that the existence of such a right cannot be shown to affect the account of rents and profits of the estate before the master.

By the first exception of the defendants, as we understand it, they seek to maintain the proposition that, as it now appears that Tate was not only in actual possession when he gave the certificate of foreclosure, but had a legal estate and right of possession, he could lawfully and effectually give such a certificate; and therefore that the foreclosure was complete before this bill was brought.

If the general owner could be thus foreclosed, it is not competent for the defendants, at this stage of the case, to set up that ground of defence, which goes to the entire right of the plaintiffs to maintain their bill, after a full hearing upon the case and a decree for redemption ; and especially after an order of the court refusing to the defendants the right to re-open the main issue, from which no appeal was taken.

But, aside from any effect that it might have upon the question of foreclosure, the homestead right was not involved in the hearing and decree establishing the right of the plaintiffs to redeem. As owners of the general estate, including a present interest in the excess above the value of $800, and the reversion after the homestead estate, they were entitled to redeem the mortgage from any one by whom it was held, whatever other rights such person might have. The bill to redeem is a proceeding against the defendants as assignees of the mortgage, and affects them in that right and capacity alone. To have set up the homestead against the plaintiffs at the hearing upon the main issue would have been unavailing, either to defeat or to modify the decree for redemption. That decree therefore does not estop Mrs. Tate

from asserting her present right of homestead, nor the defendants from relying upon that right to justify the possession of both Mr. and Mrs. Tate heretofore, and to relieve them from liability to account for rents and profits, so far as the existence of that right may have that effect.

It was proper, therefore, that the master should receive the evidence in regard to the homestead right. If such a right existed, as would appear to be the case from what is disclosed in the report, though the master has not so expressly found, the defendants were entitled to the benefit of that fact in determining their liability to account.

Assuming that right to exist, the mere occupancy of the premises by Mr. and Mrs. Tate in pursuance of that right, although the whole premises so occupied exceeded the amount which they were entitled to hold in severalty, would not make them liable to account for the value of the use of the excess. Until the homestead is set off, their occupation is like that of tenants in common with the general owners. *Silloway* v. *Brown*, 12 Allen, 30. *Badger* v. *Holmes*, 6 Gray, 118.

This right has also a strong bearing upon the question of the liability of the mortgagee to account for the rentable value of the estate. The mortgagee is chargeable, if at all, on the ground that, with reasonable diligence, he might have collected such rents, and that, as against the plaintiffs in a bill to redeem, he had no right to omit to do so.

The mortgage in this case, being prior to the statute of 1855, was not subject to the homestead right. The mortgagee might have ejected Mr. and Mrs. Tate, or required them to pay full rent. But he was not bound to do either. If he did not take actual possession and control of the property, he assumed no obligations in respect to the income. *Charles* v. *Dunbar*, 4 Met. 498.

The master's report does not show that Fall or the original mortgagee ever took actual possession of the premises. On the contrary, we think it is manifest that no such possession was in fact taken by either. The certificate given by Tate, which was apparently a mere formal matter, has been, by the former decision in this case, declared to have been inoperative against these

plaintiffs; and if it were otherwise, it would not be conclusive evidence of such possession. *Charles* v. *Dunbar, supra.* Neither Curtis nor the plaintiffs were prevented from entering and maintaining their rights as general owners by any act of the mortgagee excluding them.

We do not find, therefore, in the master's report any ground upon which Fall can be held liable to account for the full rentable value of the estate, or indeed for any income thereof beyond the rents actually received by him. *Marsh* v. *Hammond*, 103 Mass. 146. The rule of law as above stated is fully recognized and sanctioned in *Richardson* v. *Wallis*, 5 Allen, 78, although in that case the mortgagee, who had taken actual possession, was held accountable for the full rentable value of the estate, not being relieved even to the extent of the value of the homestead. But as a homestead, subject to a first mortgage, is not bound to contribute towards its payment in favor of the owner of the equity, (Gen. Sts. *c.* 104, § 4,) we do not see on what ground such owner, or a second mortgagee without release of homestead, can require the first mortgagee to collect or be accountable for rent from the homestead interest, in order to reduce the mortgage for the benefit of those against whom the entire homestead right is a valid incumbrance on the estate, in addition to the first mortgage. See *Mercier* v. *Chace*, 11 Allen, 194; *Swan* v. *Stephens*, 99 Mass. 7. The peculiar character of the homestead right was apparently not sufficiently considered in *Richardson* v. *Wallis*. The same question may arise upon another hearing of this case, and may then require further discussion and consideration.

Like considerations apply to the case against Mrs. Tate. Being rightfully in occupation under her homestead title, the mere fact of taking an assignment to herself of the mortgage did not so change her position as to make her accountable for the rents and profits as mortgagee in possession. Unless and until she makes use of her title as mortgagee to retain her possession of the whole premises adversely to the owners of the equity, or to control the property in some mode, she will be considered as holding according to her previous title and right. *Lamson* v. *Drake*, 105 Mass. 564. It does not appear from this report that she has made such

use of the mortgage title. As the case now stands, she is not accountable for rent by reason of her own occupation; but only for rents actually received by her beyond what she would be entitled to as owner of the homestead right. Of course, the facts may appear differently upon another hearing, directed with reference to the points now decided. We do not undertake, upon this report, to determine as to the ultimate liability of either defendant; but merely to indicate the rules of law applicable to the case as now presented.

The result now is, that the plaintiffs' exception, and the first of the defendants' exceptions to the report of the master, are overruled. The second exception of the defendants is sustained, and the case is to be recommitted for a new hearing and statement of the account. *Ordered accordingly.*

After the above decision, the master made another report, from which it appeared that Tate and his wife and family resided upon the premises from 1854 until he died in 1863, and that she resided upon them afterward. October 17, 1860, the Loan and Fund Association assigned the mortgage to the defendant Fall for $388, which was the sum then remaining due upon it. Fall never took actual possession of the premises, but held the mortgage and assignment for the use and benefit of Harriet E. Tate, and January 4, 1870, in pursuance of his bond given her in 1861, he conveyed the premises to her by quitclaim deed, which conveyance was, in effect, but an assignment of the mortgage, though both parties then supposed that the mortgage had been foreclosed. Mrs. Tate, ever since her occupation of the estate, had a homestead in it, and had the sole use of the premises. Since 1860, she rented some portions of them, and received rents beyond what she would be entitled to as owner of the homestead to the amount of $1108.50. The amount due on the mortgage was $714.78. The amount Mrs. Tate paid out for taxes and repairs, over and above what she would have paid out on her homestead was $648.78, which left the sum of $255.06 due upon the mortgage. The master further found that the defendant Fall had never occupied the premises, and that there was nothing due from him.

The report then proceeded as follows :

" The complainants requested me to rule that the defendants, by pleading an absolute title to the estate in 1862 and in the present suit, and by undertaking to convey the same absolutely, thereby asserted a right and title to it in such a way and extent as should render them liable for the whole rentable value of it, but I refuse so to rule or decide. They also claimed that, as Moses F. Tate, after such certificate, had assumed to pay and paid rent to the mortgagees, those claiming under the mortgagees must account for the rentable value of the premises. Also that if the defendants are not liable for the use, they could not charge for taxes or repairs, and request me so to rule, but I refuse so to rule or decide. To the above rulings the plaintiffs except.

" The defendant Mrs. Tate requested me to find that Moses F. Tate in his lifetime paid to said association moneys to reduce said mortgage from ' about $1200,' (the sum said to have been due upon it when the estate was conveyed to Curtis and Gilson,) to $388, and offered me evidence tending to show that; on the other hand the plaintiffs offered evidence tending to show that Curtis in his lifetime furnished money to pay off some part of said mortgage. In view of all the evidence, I find that said Moses F. did not so reduce the mortgage from ' about $1200 ' to $388, nor do I see how (as neither her nor his estate is a party to this suit) it is now material, it being admitted now that $388 only was due upon it on October 17, 1860."

The defendants filed exceptions to this report, but none were filed by the plaintiffs.

The cause was heard on the master's report and the exceptions thereto by *Devens*, J., who ordered that the complainants be admitted to redeem on payment of $255.06, " but, the defendants thereupon presenting exceptions to said report, the case is reserved for consideration of the whole court upon the report and exceptions thereto, a final decree to be entered, unless the defendants' exceptions are sustained, that complainants be admitted to redeem and the mortgage be discharged, on payment of $255 as of November 17, 1874, less any sums received from rents subsequent to that date, and any which the court shall decide com

plainants are entitled to be allowed from those charged in the account."

*C. M. Ellis*, for the plaintiffs.

*A. B. Berry*, for the defendants.

WELLS, J. The defendants except to the report of the master because they were allowed to charge only the amount remaining due on the mortgage at the time it was transferred to Fall for the use of the defendant, Mrs. Tate, in 1860 ; whereas the deed from Moses F. Tate to Curtis and Gilson, in 1855, under which the plaintiffs have their title, recites, and is made subject to, a mortgage of $1200 which the grantees assume as part of the consideration. It is contended that the plaintiffs ought not to have the benefit of payments, made by the husband of Mrs. Tate in his lifetime, by which the amount due on the mortgage was so reduced.

It does not appear that Tate made such payments, and the master finds the contrary. The bill, it is true, as urged by the defendants, assumes $1200 as the principal debt secured by the mortgage. But the plaintiffs claim an account of rents from the date of the deed from Tate in 1855. The reduction of the mortgage debt may have arisen from the application of those rents, or from payments by Tate in lieu of rent. There is nothing in the case to show that it was not so.

But even if Tate had made payments in his lifetime beyond what was due from him as rent, and which enured to the benefit of the plaintiffs by reducing the debt which they were bound to pay, yet the defendants show no right to avail themselves of such payments. The money is not due to them as purchasers of the mortgage and mortgage debt, because its payment operated to discharge that debt, *pro tanto*, before they acquired it. They are not accountable for it to the estate of Moses F. Tate, and show no right to recover it for the use of that estate. Mrs. Tate may be entitled to it, or a part of it, as widow and distributee ; but her right can be derived only through the administrator. It is too late at this stage of the case to require the administrator to be brought in as a party to the suit, or to permit him to come in for the purpose of re-opening the account. And besides, there is only

a suggestion that the administrator may have some interest; the report does not show any actual interest in the matter.

The exceptions of the defendants must therefore be overruled.

The plaintiffs have filed no exceptions. The master states certain rulings and refusals to rule, and that the plaintiffs excepted thereto. If points so raised may be regarded as having the force of exceptions or of questions of law referred to the court by the master at the request of the party, they are not before us except so far as reserved by the single justice who heard the case, there being no appeal from his decision.

The only question reserved, upon the side of the plaintiffs, is whether the amount for which the decree was made shall be reduced on account of any rents for which the plaintiffs "are entitled to be allowed from those charged in the account." The claim of the plaintiffs is that the defendants should be held accountable for the whole rentable value of the premises. First, because they had asserted and attempted to hold an absolute title to the estate. Secondly, because Moses F. Tate had given a certificate of possession to the original mortgagees, and had assumed the payment of rent to them; and therefore those mortgagees would be accountable for rents to that extent, and their assignees, the present defendants, would stand in the same position as the original mortgagees, whose rights alone they have. Neither of these positions is tenable.

Mrs. Tate's rights under her homestead title could not be defeated by reason of any claim that might be made by her, or by the other defendant, of an absolute estate by foreclosure of the mortgage.

Accordingly, the decree of the single justice, without any deductions, is                    *Affirmed.*