# PHELPS B. SMITH'S EXŘ.

## v.

## NANCY M. SMITH, APT.

OCTOBER TERM, 1893.

*Will.    Undue influence.    Circumstantial evidence    may establish.    Habit of intoxication.*

1.  While it must appear, in order to avoid a will upon that ground, that the undue influence operated upon the very act of making the will, that fact need not be established by direct testimony, but may be inferred from circumstances, although opportunity alone upon the part of the person to be benefitted is not enough.

2.  *Held*, that the circumstances in this case tended to show undue influence.

3.  It appeared that the testator had been for some time habitually addicted to the excessive use of intoxicating liquor. The evidence of the proponent tended to show that shortly before the execution of the will the testator drank some whiskey, but was comparatively sober and rational at the time, while the testimony of the contestants tended to show that he was so drunk that he knew nothing. *Held*, error to instruct the jury that they were not to consider the habits of the testator as to intoxication in determining his condition at that time.

Appeal from a decree of the probate court for the district of Addison establishing the will of Phelps B. Smith. The contestant pleaded undue influence and mental incapacity. Trial by jury at the June term, 1892, Addison county, TAFT,

J., presiding.   Verdict that the instrument is the will of Phelps B. Smith.   The contestant excepts.

The contestant claimed that her evidence tended to show undue influence.   The court declined to submit this issue to the jury, and the contestant excepted.

The contestant also excepted to the charge of the court that the previous habits of the testator as to the excessive use of intoxicating liquor had no bearing upon the question whether he was intoxicated at the time he executed the will.

The facts upon which these exceptions arise appear in the opinion.

*Henry Ballard* and *Stewart & Wilds* for the contestant.

The question of undue influence should have been submitted to the jury.   *Sessions* v. *Newport*, 23 Vt. 9; *Jones* v. *Booth*, 10 Vt. 268; *Wemet* v. *Lime Co.*, 46 Vt. 458; *Fairbanks* v. *Nelson*, 56 Vt. 657; *Witcher* v. *Peacham*, 52 Vt. 242; *Smith* v. *Franklin*, 61 Vt. 385.

Direct evidence of undue influence was not necessary. *Reynolds* v. *Root*, 62 Barb. 250; 1 Red., Wills, 528.

*W. H. Bliss*, *W. P. Dillingham*, and *E. R. Hard* for the proponent.

There is no presumption of undue influence from the fact that one of the legatees wrote the will, even as to that legacy.   1 Wms. Exrs., (6th Am. Ed.) 112, 113; *Barry* v. *Butlin*, Curt. 638; 2 Moore P. C. 480; *Darling* v. *Loveland*, 2 Curt. 225, 227; *Jones* v. *Goodrich*, 5 Moore P. C. 16; *Mitchell* v. *Thompson*, 6 Moore P. C. 137; *Browning* v. *Budd*, 6 Moore P. C. 430; *Greenville* v. *Tylee*, 7 Moore P. C. 320; *Souler* v. *Plowright*, 10 Moore P. C. 440; *Keogh* v. *Barrington*, Cas. Temp. Napier 1; *Smith* v. *Goodacre*, L. R. 1 P. & D. 359; *McKnight* v. *Wright*, 12 Rich. (S. C.) 247; *Bancroft* v.

*Otis*, 91 Ala. 279; *Chandler* v. *Jost, (Ala.)*, 11 So. Rep. 636; *Carter* v. *Dixon*, 69 Ga. 82; *Downey* v. *Murphy*, 1 Dev. & Bat. 82; *Griffith* v. *Diffenderfer*, 50 Md. 466; *Sterling* v. *Sterling*, 64 Md. 138; *Cramer* v. *Crambaugh*, 3 Md. 491; *Montague* v. *Allan*, 78 Va. 592; *Armstrong* v. *Armstrong*, 63 Wis. 162; *Dale* v. *Dale*, 36 N. J. Eq. 269; *Rusling* v. *Rusling*, 36 N. J. Eq. 603; *Coffin* v. *Coffin*, 23 N. Y. 9; *Tyler* v. *Gardiner*, 35 N. Y. 559, 593; *Cudney* v. *Cudney*, 68 N. Y. 148.

The jury ought not to have been permitted to consider the habits of the testator as bearing upon his condition when the will was executed. 1 Wms. Exrs., (6th Am. Ed.) 41, 42; *Andress* v. *Weller*, 2 Green. Ch. (N. J.) 604, 608; *Handley* v. *Stacey*, 1 F. & F. 574; *Duffield* v. *Morris*, 2 Harr. 375; *Peck* v. *Cary*, 27 N. Y. 9, 17; *Van Wyck* v. *Brasher*, 81 N. Y. 260, 262.

MUNSON, J. To establish the invalidity of a will on the ground of undue influence it must be made to appear that the influence was exerted upon the very act of making the will, and that it was such as to induce the testator to act contrary to his wishes, and to make a disposition of his property which he would not have made if left entirely to his own judgment. *Foster's Exrs.* v. *Dickerson*, 64 Vt. 233. The law does not permit this undue influence to be inferred from the mere fact that one who is to profit by the instrument had an opportunity to impress his will upon the mind of the testator. There must be some evidence tending to show that an undue influence was actually exerted. But the fact of its exercise may be found without the aid of direct testimony. It follows that when there is evidence of circumstances which have a legitimate tendency to prove that undue influence was used, the case must be submitted to the jury.

The testator's mother and a daughter eight years of age

were his only lineal relatives at the time the will was made. His father and his wife had died about a year before that time. The testator had been engaged in settling his father's estate, and had been assisted therein by Cyrus Smith, a cousin, and D. H. Bennett, a second cousin—the beneficiaries of his will who are claimed to have unduly influenced its making. The testator had used intoxicating liquor freely for nine years, and had for some time been a confirmed drunkard. Witnesses differed widely as to the effect produced upon him by this habit. For the purposes of our inquiry the testimony most favorable to the contestant must be taken to be true. According to this, the testator's nervous system was broken down, his mind and memory seriously impaired, and his will power weakened. He had become unlike his former self in demeanor, and apparently in character. He was vulgar and profane in the presence of his mother and daughter. He sometimes threatened suicide when morose and despondent from the effects of drink. He was under the immediate influence of liquor the greater part of the time for several weeks before the will was executed.

Cyrus Smith, the residuary legatee, was a near neighbor of the testator, a frequent visitor at his house, and a friend whom he had long been accustomed to consult concerning his general business. Smith had interviews with the testator at the testator's house on fourteen days during the six weeks preceding the execution of the will, which he testified were concerning the business of the father's estate. The last of these occasions was two days before the will was executed, at which time he was alone with the testator about an hour. In pursuance of a request made at this interview, he went to the testator's house the day the will was executed, and was then advised with by the testator in regard to some papers which he wished to execute on that occasion, and did execute before signing the will. Although at the house, Smith was not present when the will was signed, having left

the room a few minutes before, for what reason he was unable to state, unless it was because he supposed that the testator's will was to be executed.

The will was drawn, and its execution attended to by D. H. Bennett, the other legatee mentioned. About a month before this the testator had executed another will drawn by Bennett, which the proponent's evidence tended to show was prepared from memoranda dictated by the testator, and executed without any attempt at secrecy. That will was the same as the succeeding one, except that it contained a considerable cash legacy to a female domestic. The testator afterwards concluded that it would be better to pay her the amount of this legacy and execute another will. Just before the second will was executed, the testator and Bennett went into another room and remained there alone a few minutes, during which time, according to proponent's testimony, the testator read the will. The execution of the will was attended with some secrecy, all the talk in regard to it being in a tone scarcely above a whisper. The proponent's testimony tended to show that this caution was observed because of the testator's desire to keep the proceedings from the knowledge of the domestic above referred to.

The testator and his mother had always lived together, and his mother had recently had the charge of his daughter. The mother was sixty-one years of age, and had property of the value of twenty-five thousand dollars. They had all lived at Vergennes during the preceding winter, but had returned to the testator's home the last of March, and were there when the first will prepared by Bennett was executed. In the latter part of April the mother took the daughter back to Vergennes to attend school, and remained there with her until shortly before the instrument in suit was executed, when she returned home for a brief stay. Bennett saw her at the house when he was making preparations for the first will, and both Bennett and Smith saw her there the day the

second will was executed.   She had long had a friendly acquaintance with them both.   Bennett testified that he talked with her about the legacy to himself when  the first will was being prepared, and Smith testified  that he had a conversation with her about the execution of  the second will the day it was signed.   The mother testified that  no such conversations were had, and that she  knew nothing about the execution of  either will, nor of  her son's purpose to have Bennett prepare a will, until after the testator's death.

According to this testimony the testator's mental condition was such that he could  be  easily influenced.   His reliance upon the beneficiaries in other matters would  make him especially susceptible to  influence  from  that quarter.   They had every opportunity—the one as draftsman of his will, and the other in  repeated interviews—to exert an influence upon him.   While the testator's conduct in  the  presence  of his daughter indicates that his habits had  dulled  his  sense  of parental responsibility, there is nothing to show, and the age of the daughter would forbid the inference, that anything had occurred to lessen  such natural  affection for her as  his  impaired  sensibilities were  capable  of.   The will, while  not extremely adverse to the daughter's  interest, is  not  in  the line which  is  ordinarily dictated  by a father's  affection for his only child.   It was executed with all the  secrecy it was possible to observe when transacting the business at the testator's house.   The  jury  would not have been bound by the · proponent's explanation of this secrecy, and might have observed in the  manner of the witnesses a sufficient reason for disregarding their statement.   Laying this explanation aside, the case is not without circumstances which indicate that the secrecy was designed to keep the testator's mother in ignorance of his action.   If the secrecy was practiced against her, it was practiced not merely against the testator's mother, but against the  person who was  by force  of  circumstance the natural protector and guardian  of  his child.   Both the per-

sons benefitted at the expense of the daughter were fully cognizant of the mother's position and responsibility in regard to her. The jury might have believed the mother's testimony that nothing was said to her about the matter by Smith or Bennett, and if they believed that the beneficiaries had intentionally falsified in regard to this, the fact that they had done so would have had a bearing upon the question raised in regard to them. We think it cannot be said that there was no evidence tending to show the exercise of undue influence.

The proponent's testimony tended to show that the testator drank some whiskey shortly before the will was executed, but that his condition was such that he could walk naturally and converse rationally. The contestant's testimony tended to show that the testator was so intoxicated that morning that he staggered as he walked, and did not know what he was about. With this testimony in the case, it was error to say to the jury that the evidence touching the testator's habits of intoxication had no bearing upon the question of his condition at the time the will was executed. In the case of a man who is shown to have taken one drink, and who has liquor at his command, an habitual lack of restraint in regard to it would increase the probability that he had taken more than could be directly proved, and so strengthen the probability that he was in the condition testified to by the contestant's witnesses.

As the objections taken to the evidence can be obviated by a change in the method of inquiry without detriment to the proponent's case, we do not deem it essential to consider them.

*Judgment reversed and cause remanded.*