THEDA MARIA HANSEN, APPELLANT, V. MARY ROOS ET AL., APPELLANTS: GERDES J. BADBERG ET AL., APPELLEES.

FILED JULY 16, 1927.  NO. 24959.

1.  **Deeds:** CANCELATION: MENTAL CAPACITY: BURDEN OF PROOF. "Where it is sought to cancel a deed for the want of mental capacity of the grantor to make the instrument, the burden of

proof is on the one who alleges the mental incapacity." *Brugman v. Brugman*, 93 Neb. 408; *In re Guardianship of Wessel*, 114 Neb. 704.

2. ——: ——: UNDUE INFLUENCE: BURDEN OF PROOF. "Upon conveyance of real estate by a mother to her son, when the facts and circumstances surrounding the transaction are such as to show that the deed was executed and delivered for a sufficient consideration, the burden of proof rests on the one who attacks the conveyance to establish undue influence. The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor." *In re Guardianship of Wessel*, 114 Neb. 704.

3. Affirmance. The record examined, discussed in the opinion, and *held* that the judgment is supported by the evidence and is therefore affirmed.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*D. W. Livingston* and *George H. Heinke,* for appellants.

*W. F. Moran* and *Edwin Moran, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

GOSS, C. J.

This is a suit in equity to cancel and set aside a deed conveying 160 acres of land on the grounds that the grantor was incompetent and that its execution was procured by undue influence. From an adverse decree the plaintiff and certain defendants similarly affected appeal.

The land in question is the southwest quarter of section eight, township seven, range thirteen, in Otoe county, Nebraska. It was purchased by John G. Badberg in 1875 for $1,500 with a down payment of $400. Title was taken in his name and it became the family homestead for himself and H. Maria Badberg, his wife, and their two sons and three daughters. John G. Badberg died on May 5, 1883, leaving a will as follows:

"In the name of God, Amen. I, John G. Badberg, of the township of Rock Creek in the county of Otoe and

state of Nebraska, being of sound mind and memory do make and publish this my last will and testament. I give and bequeath unto my wife, H. Maria Badberg, my real and personal estate and do appoint C. W. Stahlhut and G. W. Montgomery to be my administrators. My will is that my wife shall have charge of with the consent of the above named administrators. In case my wife H. Maria Badberg marries again after my death she only receives the third part of all my personal and real estate. I give and bequeath unto Gerdes J. Badberg all my real and personal property under the following conditions. 1st. That the said Gerdes J. Badberg shall work and stay on the above named farm until after our death. 2d. I give and bequeath unto Harm W. Badberg my son the sum of $5. `3d. I give and bequeath unto Maria C. Badberg married to Hilke Julfs the sum of $5. 4th. I give and bequeath unto John H. Badberg the sum of $5. 5th. I give and bequeath unto Schwantie M. Julfs the sum of $5. 6th. I give and bequeath unto Stinje J. Badberg the sum of $200. 7th. I give and bequeath John G. Badberg, son of Stinje Badberg, the sum of $200 to be paid to him when he is of the age of 21 years. 8th. I will and bequeath unto Anke M. Badberg the sum of $400 when she arrives of age, or 21 years. 9th. I will and bequeath unto Herman H. Badberg the sum of $1,000 and one team of horses, on condition that he stays with his brother Gerdes J. Badberg until he is 21 years of age. Should the above named Herman H. Badberg not stay with the said Gerdes J. Badberg until he is 21 years of age he is only to receive $500 and one team of horses. 10th. I will and bequeath unto Theda Maria Badberg the sum of $400 when she arrives at the age of 21 years. In witness whereof I have hereunto set my hand this 30th day of June, 1882.

"(Signed)     J. G. Badberg,

"Hilke Maria Badberg."

"Witnesses: G. W. Montgomery.

" C. W. Stahlhut."

This will was admitted to probate June 11, 1883. When

his father died, Gerdes J. Badberg was about 23 years old and was the oldest child. When the family moved to the land in suit Gerdes was about 15 years of age and he was 66 when the case was tried. His father had consumption and was not able to work much. Gerdes broke most of the virgin soil and did most of the manual labor on the farm up to the time of his father's death and spent the major portion of the next 43 years on the farm, until his marriage working for his mother, and most of the time renting a part or all of the farm from his mother. When Gerdes was 28 years old he married and from that time until 1910 the mother lived with her younger son or with plaintiff, either on the farm or elsewhere. In 1910, Theda, the plaintiff, moved to Kansas. From then until her death the mother lived with Gerdes on the farm, which she leased to him, but reserving a room for herself in the home. There is some dispute in the testimony as to whether or not the mother made all the improvements on the place or whether or not a considerable proportion of them were made by Gerdes. He claims in his testimony to have built two barns and to have made other improvements in the way of building fences and to have paid for these out of his own money without reimbursment from his mother. He testified that at one time he made more money by selling cream separators than he made out of farming and that it was out of the proceeds of this business that he paid for the improvements. It is not of very great significance, but it indicates in a way the relationship and filial feeling of the son to the mother. She, in turn, while collecting her rents from her son or looking after her share of crop rents with the care frequently shown in the woman trained in the hardships of the pioneer, nevertheless exhibited a fine ancestral sentiment by furnishing him the money when he was a young man to make a trip to Germany to see her family there. We recite these instances to show the relations of this fine old mother and her son, and to offset the single instance of discord we find in the record where the mother is testified to have said that the son did not freely

provide her with ready money.   During a long life of dealings between mother and son, in domestic life and in business matters it would be strange if some fretful complaint would not be made.   This record commends both mother and son and shows an utter lack of any attempt on the part of the son to overreach her or cause her to favor him above his kin more than the circumstances suggest he might well, as human experiences usually go, be favored.

On February 14, 1921, the mother, H. Maria Badberg, executed and delivered to Gerdes J. Badberg a warranty deed conveying to him the farm " in consideration of the sum of one dollar and an agreement to support and take care of the grantor during the balance of her life and love and affection."   It was executed and acknowledged before a disinterested notary at the home of the grantor.   She died intestate on June 10, 1924.

The appellants argue that H. Maria Badberg under the will of her husband took the absolute fee, that she was incompetent to make the deed, and that her execution of it was obtained by fraud and undue influence.   The appellees claim that the will conveyed to the widow a life estate with a devise over in fee to Gerdes J. Badberg, attaching certain conditions to be performed by him, and that he is now the owner of the land.

The decree of the trial court found that the will of John G. Badberg devised the fee simple title to the widow; that she was competent and understood the nature of her act when she conveyed by warranty deed to Gerdes J. Badberg on February 14, 1921; that she was not influenced by him or any one else, and that he is now the owner under said deed.

It is not very important in this particular case whether the will conveyed to the wife the fee simple title to the farm with the power to dispose of it or whether it was the intention of the testator to devise the life estate to his widow and the remainder to his son, Gerdes.   If the will were to be interpreted by us as showing the latter intention on the part of the testator, then the son, Gerdes, on the

death of his mother, took the entire title, subject possibly to the unpaid conditional bequests, if any yet remain unpaid. In either event, it is a moot question under the particular circumstances involved here and we do not consider it necessary to decide it. Assuming, however, under the terms of the will, that the fee simple title with the power of disposal went to the widow, then before plaintiff and those aligned with her can recover, they must show either that H. Maria Badberg was incompetent to deed the premises to Gerdes or that undue influence was brought to bear on her in his behalf.

"Where it is sought to cancel a deed for the want of mental capacity of the grantor to make the instrument, the burden of proof is on the one who alleges the mental incapacity." *Brugman v. Brugman,* 93 Neb. 408; *In re Guardianship of Wessel,* 114 Neb. 704. Tested by this rule, the plaintiff has entirely failed to show that her mother was incompetent at the time she executed the deed. To go over the record and show the evidence of the competence of the mother would be a useless waste of time and space, particularly not justified in view of the fact that appellants, upon whom the burden rested, have failed in their briefs to point out any satisfying testimony that the mother failed to know what she was doing and the significance and effect of her act. On the other hand, the testimony of disinterested witnesses fully establishes in our minds that Mrs. Badberg was mentally competent and capable of making the deed. It appears that she had the capacity to understand what she was doing. She ordered it. She knew the extent of her property and she decided intelligently what she wanted to do with it. It cannot be said that she was incompetent or incapable of making the instrument.

Likewise, the burden rests on the one who attacks the conveyance to establish the fact of undue influence. *In re Guardianship of Wessel,* 114 Neb. 704. Especially is this proposition applicable here because ordinarily no influence is considered undue which arises out of affection, care, claims of kindred and family, or other intimate personal

relations: 31 C. J. 1184, sec. 3.  There was no showing in the proofs in this case of any unlawful or fraudulent influence which controlled the will of the grantor.  She was in command of her physical and mental faculties.  She sent for the notary to come to her home, the deed was explained to her, she executed it knowingly and acknowledged it voluntarily.  She lived with her son and grantee for more than three years thereafter, accepted the consideration named in the deed, and by no act indicated any dissatisfaction with his ownership of the land or any wish or intention to seek to cancel the deed or to make other disposition of the land. It is quite possible that she felt that she was, prior to her death, carrying out her husband's will as she understood its legal effect without waiting for her death to devolve the entire estate on her son.

For the reasons we have given, we are constrained to the opinion, upon examination of the entire record, that the judgment of the trial court was right and it ought to be and is, therefore,

AFFIRMED.