Max L. Bear and D. F. Sullivan v. Standard Accident Insurance Company, a Corporation.

168 So. 18.
Division A.
Opinion Filed February 19, 1936.
On Rehearing May 18, 1936.

*Watson & Pasco & Brown,* for Appellants;

*Carter & Yonge,* for Appellee.

DAVIS, J.—In three previous cases heretofore decided, we have been compelled to deal with litigation involving the subject matter of the present appeal. Sullivan v. Duval Lumber Co., 99 Fla. 521, 126 So. Rep. 792; Standard Accident Ins. Co. v. Duval Lumber Co., 99 Fla. 525, 126 Sou. Rep. 643; Bear v. Duval Lumber Co., 112 Fla. 240, 150 Sou. Rep. 614. Many of the facts of the present controversy will be found stated in the several opinions just referred to.

In the case now before the Court the appeal is from a final decree whereby the equities of the appellants' bill were found in favor of the defendant, Standard Accident Insurance Company, as against the prayer of Bear and Sullivan for equitable relief. That prayer was in substance as follows: (1) that the defendant Standard Accident Insurance Company be held not entitled to enforce against the complainant Sullivan the lien decree recovered by Duval Lumber Company against Sullivan and assigned to the defendant, Standard Accident Insurance Company, and that said decree be discharged and canceled; (2) that the plaintiff, Bear, be decreed to be subrogated to all rights and remedies of Sullivan against the defendant, Standard Accident Insurance Company, growing out of certain contracts of one Bryan, and that in equity and justice the defendant, Standard Accident Insurance Company, be decreed not to be entitled to collect an original judgment recovered

by it against the plaintiff, Bear, but be decreed to cancel and discharge said judgment and be further enjoined and restrained from attempting to collect it; (3) that interlocutory relief by injunction in aid of the foregoing ultimate relief be awarded; (4) that plaintiff Sullivan be decreed to have the right to set off against any liability on his part to the Standard Accident Insurance Company, as assignee of the lien decree and releases of lien and supersedeas bonds described in the bill, all obligations and liabilities of the Standard Accident Insurance Company to him under said defendant's alleged contractual obligations to plaintiff as in the bill set forth; (5) that the complainant, Bear, as the gratuitous surety of Sullivan be decreed to be subrogated to all rights of Sullivan against the Standard Accident Insurance Company to enforce the contractual obligations and liabilities of defendant Sullivan as in the bill set forth, and that he be decreed to be entitled in equity to set off as against any liability of his own to Standard Accident Insurance Company, all contractual obligations and liabilities of the Standard Accident Insurance Company to Sullivan as described in the bill; (6) prayer for general relief.

The history of the controversy as set forth in the bill of complaint is in substance as follows:

In the year 1925 the appellant, Sullivan, hereafter referred to as the owner, entered into a contract with A. G. Bryan, hereafter referred to as the contractor, under which Bryan agreed for the sum of $21,300.00 to "provide all the materials and perform all the work" necessary to erect and construct certain dwelling houses in accordance with plans and specifications prepared by an architect, and the contractor further agreed "to do everything required by the general conditions of the contract, the specifications and the drawings."

The contract so entered into provided that the contractor (a) should provide and pay for all labor and materials used in performing his contract; (b) gave the owner, Sullivan, the right to require the contractor, Bryan, to furnish bond guaranteeing the faithful performance of his contract and the payment of all obligations thereunder; (c) provided that payments should be made to the contractor on architect's certificates; (d) that the contractor should submit to the architect an application for each payment "and, if required, receipts and other vouchers showing his payments for materials and labor"; (e) penalized the owner by requiring him to pay interest on the amount of any architect's certificate if payment thereof was not made when due; (f) provided that final payment should not become due until the contractor "if required should deliver to the owner a complete release of all liens arising out of the contract or receipts in full in lieu thereof"; (g) provided that "if any lien or claim remain unsatisfied after all payments are made the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging such lien or claim."

As required by the contract the contractor furnished the owner a bond executed by a compensated surety guaranteeing the performance by the contractor of his contract. 'The bond by express reference made the contract a part of the bond, and guaranteed to the owner that the contractor would (a) carefully perform his contract; (b) would satisfy all claims and demands incurred in performing the same; (c) would fully indemnify and save harmless the owner from all costs and damages he should suffer by reason of failure of the contractor so to do; (d) was conditioned to fully reimburse and repay the owner all outlay and expense he incurred in making good any such default of the con-

tractor; (e) contained the further obligation to pay all persons who furnished the contractor with labor or materials; and (f) provided that any alterations made in the terms of the contract or in the work to be done under it, or the giving by the owner of any extension of time for the performance of the contract, or any forbearance on the part of either the owner or the contractor to the other should not release the contractor's surety, notice of any such alteration, extension or forbearance being waived by the surety.

The contractor purchased building materials from a materialman, Duval Lumber Company, which were used in the performance of the contract, but he did not pay therefor.

The architect, however, issued to the contractor his certificate certifying that the contractor was entitled to the final payment due under the contract without requiring the contractor to furnish receipts and vouchers showing the payment of said material bill. After the issuance of said architect's certificate said material creditor served notice of lien on the owner at a time when the owner, insofar as the rights of said materialman creditor were concerned, was indebted to the contractor, after the service of said lien notice the owner paid the contractor the amount of said architect's final certificate without requiring the contractor to deliver him a release of the lien or claim of said material creditor.

As a result of a default in payment for the building materials purchased of the Duval Lumber Company which the contractor had used in the performance of the contract, but which neither the owner, Sullivan, nor Bryan, the contractor, would pay for, litigation was instituted and carried to a conclusion which ultimately resulted in the rendition of several judgments for the amounts unpaid, each in favor of

Duval Lumber Company, and severally against the contractor, Bryan, his surety, Standard Accident Insurance Company, the owner, Sullivan, and Bear, Sullivan's uncompensated surety on a lien release and supersedeas bond given in one of the cases. Each of the judgments represented an obligation to pay the same debt and each was in favor of Duval Lumber Company. See Standard Accident Ins. Co. v. Duval Lumber Co., 99 Fla. 525, 126 Sou. Rep. 643; Sullivan v. Duval Lumber Co., 99 Fla. 521, 126 Sou. Rep. 792; Bear v. Duval Lumber Co., 112 Fla. 240, 150 Sou. Rep. 614, hereinbefore referred to.

After the affirmance of the common law judgment against the contractor, Bryan, and Standard Accident Insurance Company, his compensated surety, and the affirmance of the equity decree rendered in favor of the materialman, Duval Lumber Company, against the property of the owner, Sullivan, the Standard Accident Insurance Company, Appellee, in this case, paid to Duval Lumber Company the amount of the judgment that it, as materialman, had obtained against said company as surety for the contractor above mentioned, and, after having said judgment against it cancelled, took an assignment of the Duval Lumber Company's equity lien decree against Sullivan, the owner, for the same claim. The consideration for the transaction was the surety company's payment of the judgment debt and costs represented by the Duval Lumber Company's common law judgment against the contractor and his surety.

During the pendency of the chancery proceedings instituted against the owner Sullivan to enforce the Duval Lumber Company's materialman's lien, one Max L. Bear, one of the appellants in this case, voluntarily executed and bound himself as an uncompensated surety on a certain statutory bond given in that case for release of the lien sought

to be enforced, and also bound himself as a voluntary surety on a supersedeas bond given in that same case obliging him to pay the amount of the decree rendered in that suit, should the decree therein be subsequently affirmed, which it was by this Court, as hereinbefore mentioned.

We thus have before us on this appeal a controversy wherein the original issues have now been narrowed down into a final contest between the compensated surety, Standard Accident Insurance Company, as an assignee of the Duval Lumber Company Lien decree, on the one hand, and Sullivan, the owner, and Max L. Bear, his alleged uncompensated surety on bonds given to secure the payment of that decree on the other hand, and involving the question which of these several parties should finally be decreed to bear the burden of the contractor's initial default consisting of his failure to satisfy the Duval Lumber Company's materialman's claim, which failure had brought about the several different lawsuits and judgments hereinbefore adverted to in this opinion.

At the outset of any discussion of the equities existing between the parties to the present suit, it must not be forgotten, however, that there has been assigned to the Standard Accident Insurance Company the particular chancery decree recovered by Duval Lumber Company against Sullivan, his property, and Bear, his surety. It follows, therefore, that said Standard Accident Insurance Company has become independently entitled, with like force and effect as was Duval Lumber Company, the assignor, entitled, to stand upon, enforce and collect the amount of said assigned decree, unless there shall be shown in bar thereof, some special and peculiar equity, not heretofore capable of being put in issue, or not heretofore actually adjudicated between the parties to this suit, which special and peculiar equity

will entitle the appellants to equitable relief against the assignee, Standard Insurance Company, not as an assignee of Duval Lumber Company, but upon some independent equitable ground of action capable of being adjusted in an equitable proceeding by way of equitable set off or counter claim against the money demand the Standard Accident Insurance Company has now become entitled to enforce in its newly invested status of judgment assignee, wholly disassociated from other relationships between the parties heretofore existing.

It is the contention of Sullivan that under the terms of the contractor's bond given to him by Bryan with Standard Accident Insurance Company, as surety thereon, that it became and was the bounden duty of the contractor to protect, indemnify and save Sullivan harmless against the suits and claims of Duval Lumber Company which have been occasioned by the contractor's and his surety's default in the payment of the materialman's indebtedness against Sullivan's property, and that it was only because of the initial failure of Standard Accident Insurance Company to make good on its contractor's bond in Sullivan's favor, that Sullivan, together with his surety Bear, now find themselves in a legal situation wherein they are nominally liable in law to the surety, Standard Accident Insurance Company, on the assigned judgment the latter has acquired as hereinbefore recited, but which it is alleged it became, was and still is its bounden duty as a compensated surety, to exonerate Sullivan and Bear from their liability to pay, at least in part.

On the other hand, it is contended by the appellee, Standard Accident Insurance Company, that notwithstanding its original liability as surety on the bond given by the contractor to Sullivan, if any, that by virtue of the proceedings

heretofore had between the parties to the present cause, and the adjudications that have been made therein and affirmed by this Court, that Sullivan and his surety, Bear, have, in contemplation of law, estopped themselves to claim any right of exoneration with reference to the assigned decree which Standard Accident Insurance Company now has acquired and still holds, and that therefore the bill of complaint in the present case sets up nothing sufficient to warrant relief of the character prayed for and denied in the Court below.

Equity regards the substance and not the form of things. Likewise equity regards that as done which ought to have been done. The true meaning of these maxims of equity is that equity will treat the subject matter, as to collateral consequences and incidents, in the same manner as if the final acts contemplated of the parties had been executed exactly as they ought to have been; not as the responsible parties actually did execute them. Moreover, as a corollary to the last stated maxim, it is to be specially noted that in many instances equity must also consider that as undone which never ought to have been done, insofar as the parties before the Court may be concerned. Beck v. Uhrich, 13 Pa. It. 636, 53 Am. Dec. 507.

Applying the foregoing consideration to the determination of the present case, it seems clear to us that the controversy now being considered must be adjudged in the light of Sullivan's right to look to the Standard Accident Insurance Company to indemnify and save him harmless from any and all legal liabilities to which he may have become subject by reason of Standard Accident Insurance Company's failure to live up to any obligation devolving upon it as a surety on the contractor's bond given to Sullivan pursuant to the terms of Bryan's construction contract.

Hence, if any such contractual liability be found to exist, then such liability is, to that extent, subject to being herein adjudicated and set off in equity against the assigned judgment the Standard Accident Insurance Company appears to have acquired against the party to whom it has, itself, become equitably liable to exonerate to the extent of what it, itself, may be due to perform in Sullivan's behalf. And, of course, Bear, Sullivan's surety, is entitled to the same benefit of such exoneration, as is Sullivan, because of his suretyship on Sullivan's behalf.

It is a familiar and favorite principle of courts of equity to adjust in one suit any conflicting demands between the parties which are capable of such adjustment, especially where the equity suit exhibits some equitable ground, growing out of the transaction or relations of the parties, which brings the main controversy within the general jurisdiction of a court of equity because of the necessity of awarding relief beyond the general powers of a court of law to make adequate.

Thus where an equitable duty, such as that of exoneration under a contractual obligation, is asserted to exist, and is duly alleged as the basis for equitable relief, a court of chancery has jurisdiction to restrain a judgment creditor from collecting his judgment against the judgment debtor, until the equitable claim for exoneration on the part of of the latter against the former, has been judicially investigated, and in the event it is judicially established, to thereupon decree an equitable set off of one against the other. The interference of a court of equity in such cases must be invoked on equitable grounds and the criterion by which the allowance of relief is determined is that upon which the whole preventive jurisdiction of a court of equity is based and exercised to prevent irremedial injustice.

The equitable basis for the present suit on Sullivan's part is the alleged right of Sullivan to compel the Standard Accident Company to specifically carry out the latter's obligation to him under the terms of the construction contract bond upon which it assumed liability as the contractor's surety.

The equitable basis for the present suit on Bear's part is his alleged equitable right to have inure to his benefit any claim or benefit of security which Sullivan may have become entitled to enforce as against Standard Accident Insurance Company as a means of discharging the obligations for which he (Bear) in turn became Sullivan's surety.

In its essence, therefore, the present suit is not an offer or attempt to herein impeach the judgment that has been rendered and assigned to Standard Accident Insurance Company, but is an effort in the nature of a suit for specific performance of the Standard Accident Insurance Company's construction contract bond obligation which it, as obligee, is alleged to have now become in law and in duty bound to discharge by satisfying the judgment acquired by it by means of an assignment thereof from an assignor whose debt, so it is alleged, was due to be satisfied in the first instance by Standard Accident Insurance Company unless paid by the building contractor. Thus, disregarding the mere form of things, as a court of equity must often do in order to achieve equity, the present suit must be treated as if it were an original suit brought by Sullivan against Bryan, the building contractor, or Standard Accident Insurance Company, as Bryan's surety, on the building contract and bond given to Sullivan under date of January 19, 1926, and the issues to be determined in the adjudication of this controversy are such only as are appropriate to be decided in a suit of that character between

Sullivan and his immediate obligors on the building contract bond just mentioned.

None of the previous cases instituted and decided either by the Circuit Court or by this Court have undertaken to adjudicate, *as between the particular parties to the present case,* the equitable rights to exoneration now being asserted as against the appellee under the terms of the bond and contract of January 19, 1925. Whether or not any such right of exoneration exists depends, of course, upon whether the Standard Accident Insurance Company has incurred any contractual liability under its bond to pay off and satisfy the debt due by Bryan, the contractor, to Duval Lumber Company. If it has, the amount of such liability should be found in terms of a money decree, and the money decree so found should be decreed to be equitably set off in satisfaction in whole or in part of the assigned judgment shown to be held by Standard Accident Insurance Company as an enforceable legal demand against Sullivan and Bear. Nothing that has been heretofore put in issue or decided is finally determinative of that question as between the particular parties to the present appeal, because the relief herein sought is such as is capable of enforcement against Standard Accident Insurance Company only by an *affirmative* decree in a court of equity under the circumstances here disclosed. Nor do we express any opinion on the question of that liability, if any, on the showing now made by the record herein.

The decree appealed from indicates that the Chancellor did not undertake to adjudicate the present controversy in the light of the applicable rules of law hereinbefore stated, therefore the decree was erroneously arrived at and should be reversed for reconsideration in the light of what has been herein determined to be the sole and only issue to

be adjudicated between the parties—namely, whether or not Standard Accident Insurance Company has become liable on the bond of January 19, 1926, to indemnify and hold harmless the obligee Sullivan for the whole or any part of the Duval Lumber Company claim for materials used in the construction of buildings under the building construction contract to which the bond of the contractor was a mere incident and the amount of such liability, if any, to be applied to and set off against the judgment held by Standard Accident Insurance Company against Sullivan and Bear, his surety.

Where the ruling and decree of a chancellor indicate that a final decree was probably arrived at, in substantial part, upon considerations and issues not properly a part of the controversy required to be decided, the final decree will be reversed without prejudice and the cause remanded for a reconsideration by the chancellor in the light of the applicable law as determined by the opinion of the Supreme Court on its consideration of the appeal wherein such reversal without prejudice is ordered, the costs being taxed in equal proportions against appellants and appellees. Schmitt v. Bethea, 78 Fla. 304, 82 Sou. Rep. 817; Earle v. Detroit & Security Trust Co., 103 Fla. 618, 138 Sou. Rep. 65; Atlantic Shores Corp. v. Zetterlund, 103 Fla. 761, 138 Sou. Rep. 50; New York Life Ins. Co. v. Oates, 122 Fla. 540, 166 Sou. Rep. 269, opinion filed 13th day of January, 1936, decided at the last term.

Reversed for appropriate proceedings in conformity with opinion of appellate court.

Whitfield, C. J., and Brown, J., concur.

Ellis, P. J., and Terrell, and Buford, J. J., concur in the opinion and judgment.

## On Rehearing.

Davis, J.—The opinion of February 19, 1936, reversed the decree below for appropriate proceedings in conformity with the opinion of this Court heretofore filed. This rehearing is on the proposition whether the record before the Court justifies or requires an affirmance of the decree without reconsideration of the controversy by the Chancellor.

An examination of the record here shows that the reversed final decree in this case was predicated, at least in part, on the transcript of the record in Bear v. Duval Lumber Co., 112 Fla. 340, 150 Sou. Rep. 614. It is reasonably to be inferred from the argument of appellee made before this court in support of affirmance of that decree, that the Chancellor was largely influenced in rendering the decree appealed from by the belief on his part that this Court's decision in the first cited case was practically conclusive of the whole controversy adverse to the position argued by appellant, and that therefore the case now before the Court has never been tried in accordance with the applicable principles of law laid on in this Court's opinion of February 19, 1936.

Undoubtedly we have the power to completely rehear the merits of an equity case brought here on appeal from a final decree. And upon such rehearing we are unquestionably authorized to enter our own decree predicated on what may be the Supreme Court's conception of the controverted issues of fact, as well as of law in the case. And this we may do irrespective of any conclusions thereon that have been reached and declared by the Chancellor whose decision is before us on appeal. Hollingsworth v. Arcadia Citrus Growers, 122 Fla. 90, 165 Sou. Rep. 369, and cases cited.

However, when it is made to appear that an equity cause has not been tried and decided by the Chancellor accord-

ing to the applicable principles of law that the Supreme Court has found should have guided the Chancellor's consideration of the pleadings and evidence, the modern practice is to reverse and remand the cause for a rehearing and redecision before the Chancellor in the light of the appellate court's opinion, because of the opportunity thus given to make amendments and to supplement the record, where necessary, to make clearer the salient facts of the real controversy. New York Life Ins. Co. v. Oates, 122 Fla. 540, 166 Sou. Rep. 269, and cases cited.

After hearing the arguments and protestations of the parties on rehearing, we are constrained to adhere to the practice last stated and thereupon to permit the opinion and judgment of this Court entered on February 19, 1936, to stand, and mandate to issue pursuant thereto, without attempting at this time to further rehear or to now finally determine in this Court, the salient issues involved and required to be decided.

None of the previous opinions and judgments of this Court have conclusively settled the particular equitable claim of appellants Sullivan and Bear to the relief of exoneration sought in the present litigation. Therefore the present litigation should be reheard and redecided by the Chancellor in the light of the applicable principles of law that pertain to it, before this Court attempts to finally dispose of the case.

Opinion and judgment of appellate court entered February 19th, 1936, reinstated and made the judgment of the Court on rehearing.

WHITFIELD, C. J., and ELLIS and BUFORD, J. J., concur.

TERRELL and BROWN, J. J., dissent.