68 So.2d 584 (1953)
DONNELLY
v.
MANN.
Supreme Court of Florida. En Banc.
December 1, 1953.
James H. Walden, Dania, Elbert B. Griffis, Jr., and Rogers, Morris & Griffis, Fort Lauderdale, for appellant.
Ellis & Spencer, Hollywood, for appellee.
HOLT, Associate Justice.
Appellant (plaintiff below), the mother, sued appellee (defendant below), her daughter.
Appellant, more than 90 years of age, entered into an agreement with appellee daughter which provided that in consideration *585 of the daughter caring for the mother the balance of her (mother's) life, the two would live together at the mother's expense. The mother had been living for approximately 25 years with Bruce Donnelly, a son, in Marion, Virginia, who approved the agreement with the daughter, and later testified in this case as a witness for the daughter (his sister). In pursuance of such agreement, the mother and daughter journeyed to Hollywood, Florida, and after living together in an apartment for approximately three months, purchased a home, the title to which was taken in the name of both the mother and daughter with the right of survivorship. The total assets which the mother and daughter brought to Florida were, approximately, $24,000 in cash and bonds which belonged to the mother. The house was purchased in July 1951; there they resided together until October 1951 when the daughter became ill with tuberculosis. She called her brother, Bruce, and they agreed that the mother should return to his home pending the recovery of the daughter from her illness. The daughter sent the mother, together with certain bonds and cash, to the brother (Bruce), and she entered the sanitorium at Lantana, Florida.
Upon arrival in Virginia, another son by the name of Gurney (who had not been around for sometime) contacted his mother and surreptitiously carried, as charged in the brief, and kidnapped, as charged in the argument, the mother to Florida, where he is now residing with her (mother) in the same home which the daughter purchased with the mother's funds, as previously described.
Soon after arrival in Florida, Gurney had his sister arrested for embezzlement of funds. All of these actions, as the story unfolds, disclose a certain design or pattern on the part of Gurney to secure for himself the assets of his mother, including the home, and for no one else. The filing of this suit soon followed. Thereafter, the litigating parties agreed upon the appointment of a trustee, to whom the daughter paid over all of the funds and securities which she held belonging to the mother, and which trustee is now, under the provisions of the final decree entered by the lower court, paying sufficient money in regular amounts for the support of the mother.
Fortunately, the illness of the daughter was only of slight duration and she was soon, and is now, fully able and willing to carry out her part of the agreement with the mother.
There are actually only two questions with which we are concerned. The first is whether or not the agreement between the mother and daughter was a valid one and one that should be recognized and enforced. The second is whether or not the lower court had the authority to declare the mother incompetent, and appoint a trustee for her and her funds in this type of proceeding.
There is no question that there was an agreement between the mother and daughter. Even in her sworn bill of complaint, the mother admits the agreement, with slight variation from that alleged by the daughter in her pleadings and testified to in her testimony. This is further confirmed by the execution of a will dated April 30, 1951, by the mother, which was executed freely and voluntarily without any undue influence and which, substantially in every respect, confirms the agreement which is the basis of this controversy.
The master to whom this cause was referred filed and made a comprehensive report; he had all the witnesses before him in person, including the parties hereto, and after due deliberation, concluded that the daughter entered into the agreement in good faith; there was no undue influence on her part whatsoever. In confirmation she testified that she does not claim any interest in the home until after the demise of her mother. He further held that the temporary illness of the daughter did not constitute an abandonment of the agreement nor her responsibilities in connection therewith.
Appellant mother contends that appellee daughter mistreated the mother and prevailed upon her in her weakened mental condition to secure her agreement to an unconscionable contract. As to this, the *586 master specifically found that the mother had sufficient intelligence to understand the nature of the transaction and acted upon her own free will. A host of authorities, some of which we cite below, hold, that "mere weakness of mind, unaccompanied by any other inequitable incident, if the person has sufficient intelligence to understand the nature of the transaction and is left to act upon his own free will, is not a sufficient ground to set aside an agreement." See Douglas v. Ogle, 80 Fla. 42, 85 So. 243, 244; Cottages, Miami Beach, Inc. v. Wegman, Fla., 57 So.2d 439; Perper v. Edell, 160 Fla. 477, 35 So.2d 387; Sheppard v. Cherry, 118 Fla. 473, 159 So. 661; Hassey v. Williams, 127 Fla. 734, 174 So. 9; Saliba v. James, 143 Fla. 404, 196 So. 832; Wise v. Wise, 134 Fla. 553, 184 So. 91; Hatch v. Hatch, 46 Utah 218, 148 P. 433; Lamb v. Perry, 169 N.C. 436, 86 S.E. 179; DuBose v. Kell, 90 S.C. 196, 71 S.E. 371; McLaughlin v. McLaughin, 241 Ill. 366, 89 N.E. 645; Bade v. Feay, 63 W. Va. 166, 61 S.E. 348; Burt v. Quisenberry, 132 Ill. 385, 24 N.E. 622; Webster v. Leiman, 328 Mo. 1232, 44 S.W.2d 40; Dailey v. Kastell, 56 Wis. 444, 14 N.W. 635; Smith's Ex'r v. Smith, 67 Vt. 443, 32 A. 255; Riley v. Sherwood, 144 Mo. 354, 45 S.W. 1077; In re Guardianship of Wessel, 114 Neb. 704, 209 N.W. 492; Hansen v. Roos, 115 Neb. 761, 215 N.W. 99.
We must conclude, therefore, from an exhaustive search of the record, that the agreement between mother and daughter is valid and should be enforced, there being nothing to the contrary found therein.
The second and last question is whether the court erred in declaring the appellant incompetent and appointing a trustee to handle her assets. It is true that the Legislature has established a procedure, § 394.20 et seq., Florida Statutes Annotated, whereby the competency of persons may be inquired into by presenting the issue to the county judge, who, under the law, is required to appoint an examining committee including two practicing physicians, who will determine the issue of incompetency; and the other method, § 747.05 et seq., Florida Statutes Annotated, where the matter is presented only to the Circuit Court and requires two practicing physicians to inquire into it.
However, the statutory procedures just referred to are not applicable in this cause, nor is appellant and her situation contemplated by the same, and the chancellor inferentially so held. There is no contention here that the mother is insane. The facts before the master, the court and the chancellor were that here was a woman more than 90 years of age, who was, although not insane but due to the disabilities of old age, incompetent to manage her own affairs. Under the broad general powers of equity[1] the court had the authority and the power to protect this woman from herself and from all designing persons. Not only did the chancellor have the authority but it was his duty to do so, as promptly and expeditiously as possible as the situation required. That she is easily swayed and confused and misled to her own injury is highlighted and emphasized by the existence of this very case itself. Before son Gurney appeared on the scene everything was pleasant and agreeable and entirely satisfactory to all parties. The unfortunate illness of the daughter gave Gurney the opportunity to influence her as he desired, which he did to her detriment. He (Gurney) upset her mentally and physically by driving her all the way from Virginia to Florida; he planted ideas in her confused and susceptible mind whereby she became suspicious, in a vague sort of way, of the motives of her daughter with whom she had made an agreement for compensation for care during her declining years by devising her what might be left at her death. The arrest of the daughter showed malice and intent to defraud, as we recognize that one does not enter criminal charges and arrest one's own kin in a situation like this unless prompted by an evil motive. The filing of this suit and its hot contention, unnecessary in so far as the interests of the mother are concerned, will prove quite costly to her small estate.
*587 Under these facts and circumstances, can it be said that the law is powerless to act and must sit helplessly by and watch a designing man take advantage of a senile lady, his own mother, and allow him to take from her the only thing which she has left to carry her past the few remaining mile posts of her life? We have been called upon to answer similar interrogatives before. In Degge v. State Bank of Eustis, 145 Fla. 438, 199 So. 564, we said, "An equity court is a court of conscience and should not be shackled by rigid rules of procedure precluding administration of justice according to good conscience."
And "equity having acquired jurisdiction for one purpose will retain it for all." Hightower v. Thurmond, Fla., 55 So.2d 564, 566; Bear v. Standard Accident Ins. Co., 124 Fla. 9, 168 So. 18; Switow v. Sher, 136 Fla. 284, 186 So. 519, and many others of like tenor.
So when the learned chancellor below assumed jurisdiction of this cause, he had the power under a long line of well-reasoned decisions of this court, too numerous to cite herein, to adjudicate, appropriately safeguard, and promptly enforce substantial rights of all parties before the court; and this, we hold, includes the protection afforded appellant by declaring her incompetent and appointing a trustee to care for and hold her assets safe from despoiling hands.
Affirmed.
THOMAS, Acting Chief Justice, and TERRELL, SEBRING, HOBSON and MATHEWS, JJ., concur.
DREW, J., dissents.
DREW, Justice (dissenting).
I respectfully dissent from that portion of the opinion of Associate Justice HOLT affirming that part of the decree of the lower court finding Mrs. Donnelly incompetent and appointing a trustee to hold her funds and pay her therefrom the sum of $60 per week until the further order of the court, because I do not find in the record any competent evidence to support that finding.
Section 744.31, Florida Statutes 1951, F.S.A., provides:
"Petition for appointment of guardian for a person mentally or physically incompetent. No guardian of the person or of the property, or of both, of a person alleged to be mentally or physically imcompetent can be appointed until after such person has been adjudicated to be incompetent in separate proceedings instituted for that purpose in accordance with §§ 394.20 to 394.22, inclusive, of the Florida Statutes, relating to the adjudication of incompetency. After such adjudication, a petition may be filed for the appointment of a guardian of either the person or of the property, or of both, of such person, and the general guardianship laws of this state shall apply to such petition and to all subsequent proceedings thereon. Any guardian appointed as a result of the filing of such petition shall be subject to the general guardianship laws of this state."
The argument that the court below merely "impressed a trust" on the assets of Mrs. Donnelly and did not appoint a guardian for her impresses me not at all. The effect is exactly the same.
The only credible testimony in the record as to Mrs. Donnelly's physical and mental condition is that of the physician who examined her and testified that she was "* * * mentally competent, by definition, a person that can handle their own affairs, who are legally responsible." And said further: "I found her judgment unusually good for a woman of her age or for anyone as a matter of fact." The Master, however, concluded "from her demeanor and acts on the witness stand" that she was incompetent, and the lower court approved that finding and gave it vitality in the final decree by appointing the trustee.
I cannot agree that under the facts disclosed by the record here the lower court *588 or any other court "Under the broad general powers of equity * * * had the authority and the power to protect this woman from herself and from all designing persons." A court may act only within the limitations of the issues before it and within the limits of its jurisdiction as prescribed by law. The laws of this State require that before a court may appoint a guardian of the property of any person certain proceedings must be had. Such proceedings were not had in this cause and therefore the authority or right to act was absent.
It may be that the appointment of a trustee will be for the best interest of Mrs. Donnelly, but after all, it is her property and I think she has complete authority over it. Under the facts in this record, I feel she has been deprived of its full use without due process.
NOTES
[1] Sec. 744.06, Florida Statutes 1951, and F.S.A.