OTIS ELDREDGE, Conservator,

*v.*

JOHN C. PALMER *et al.*

*Opinion filed June 21, 1900.*

INSANITY—*when deed of insane person should not be set aside without restoring consideration.* A deed by one for whom a conservator is subsequently appointed should not be set aside without requiring restoration of the money paid by the grantee and the return of property or its equivalent, which he conveyed to a third party at the instance of the grantor in part consideration for his deed, where the grantee had no knowledge or notice of the grantor's infirmity or of any undue influence by the party to whom the grantee made his conveyance.

APPEAL from the Circuit Court of Edgar county; the Hon. H. VANSELLAR, Judge, presiding.

H. S. TANNER, J. W. HOWELL, and JAMES A. EADS, for appellant.

JOSEPH E. DYAS, for appellee John C. Palmer.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On December 27, 1897, James Elledge executed a deed to appellee John C. Palmer of a lot, with a brick residence thereon, on North Central avenue, in Paris, Edgar county, and in payment therefor Palmer gave Elledge $1000, and by his direction conveyed to Jane O'Hair a house and lot on Jefferson avenue, in said city. A year afterward, on December 19, 1898, the appellant, Otis Eldredge, was appointed conservator for Elledge, and thereafter filed his bill in equity in this case to set aside the deed so executed to Palmer, charging that Elledge was in his dotage and of unsound mind and memory; that he executed the deed under undue influence of Jane O'Hair, and that the consideration paid was inadequate. The bill also stated that Jane O'Hair claimed that Elledge had

previously conveyed to her a life estate in the property deeded to Palmer, and complainant denied that any such deed was made, but alleged that if it was made it was procured by undue influence of said Jane O'Hair. Palmer answered admitting the conveyances as alleged, but denying that Elledge was of unsound mind or memory, or that said defendant had any knowledge or information of the alleged incompetency or of any undue influence exercised by said Jane O'Hair, and alleging that he paid a fair and adequate consideration for the property. Jane O'Hair answered, also admitting the conveyances, and denying that Elledge was of unsound mind or that she exercised any undue influence over him. She averred that she owned a life estate in the property conveyed by Elledge to Palmer, for which she received the house and lot conveyed to her, and stated that she had conveyed the property she had received to one Swango.

The court made up and submitted to a jury three issues of fact, and upon such issues the jury returned a verdict that the deed to Palmer was not the deed of Elledge; that at the time of executing the same, Elledge was not of sound mind and memory or of sufficient mental capacity to execute and deliver deeds, and that he was unduly influenced by Jane O'Hair to execute said deed. Afterward, further evidence was taken as to the rental of the pieces of property, repairs, taxes and insurance, and the court entered a decree charging the defendant Palmer with $300 rents and crediting him with $88.15 for taxes, repairs and insurance; finding the property conveyed to Jane O'Hair worth $900, and the rent of the same $140, and interest on the $1000 cash paid by Palmer $83.32. The decree provided that the complainant should, within ninety days, pay to Palmer $1011.47, and deliver to Palmer a deed conveying to him the property deeded by him to Jane O'Hair, or, in the alternative, should pay Palmer $1911.47, and thereupon Palmer should hold the property in trust for Elledge, but in default of complainant per-

forming either of said conditions the title of Palmer to the property should be absolute. This appeal is by the conservator, who claims that the property should be returned without terms, and, that, in any event, he should not be required to restore what was deeded to Jane O'Hair, or the value thereof. The only question involved is whether the conveyance from Elledge to Palmer should be set aside without requiring the consideration to be returned.

Elledge had not been declared incompetent but was transacting his own business and managing his own affairs, and continued to do so for a year after the transaction, and the rule is, that if Palmer entered into the contract without knowledge or notice of any disability on the part of Elledge or undue influence of Jane O'Hair, in good faith and for a sufficient consideration, the conveyance should not be set aside without restoring the money paid and the property parted with. *Scanlan* v. *Cobb,* 85 Ill. 296; *Ronan* v. *Bluhm,* 173 id. 277.

The evidence was that James Elledge was about seventy-two years old. He was a widower, whose wife had been dead about eighteen years. He owned two hundred acres of land where he lived, which he rented out. Part of the time after the death of his wife, he and his married son, Vane Elledge, lived together on the farm, and after his son's death he continued to live there with his son's widow, Lizzie Elledge, and one year during that time he lived in Paris with her father and step-mother, John W. and Jane O'Hair. The defendant Jane O'Hair had great influence over him and was at the farm frequently, and he was continually doing something for the O'Hair family. He bought a buggy for her, and her husband got wood and supplies from the farm, and the next day after the transaction with Palmer he paid Palmer $225 on a note and mortgage on land belonging to Jane O'Hair. He made a deed to her of some interest in the property conveyed to Palmer, but it was not recorded and was lost or de-

stroyed, and at the time of the conveyance in question Jane O'Hair and her husband also made a conveyance of the property to Palmer. In December, 1897, when the deed was made to Palmer, Elledge had become very forgetful and manifested the weakness and feebleness of age, both in mind and body. He walked with much difficulty, with very short steps and a shuffling gait. He had been growing weaker, mentally and physically, with the advance of age, for two or three years. There were many witnesses who testified that they did not consider him capable of doing ordinary business. On the other hand, he attended to all his business and affairs, and a considerable number of witnesses regarded him as capable of transacting business. Among these witnesses were officers of banks and merchants with whom he did business and had done business for years, and they saw nothing in his talk or actions to show a want of capacity. The complainant, his conservator, who know him very well and saw him often at church and elsewhere, was not able to say he was unfit to transact business at that time, and first noticed something wrong with his mental condition about the time he was appointed conservator. Elledge conducted the negotiations with Palmer for the exchange, and there was nothing which occurred at that time indicating incapacity. Mrs. O'Hair came to Palmer's office with him and was there most of the time, but he acted independently, and there was no influence or persuasion on her part in the presence of Palmer.

It must be taken that Elledge was incapable of transacting business, but the evidence does not justify an inference that Palmer knew of such incapacity or of any circumstances which would lead to that conclusion, or any undue influence on the part of Jane O'Hair. Elledge had children and grandchildren near him who made no move to have a conservator appointed, and apparently did not consider it necessary for a year after this transaction, and during that time the property conveyed to

Jane O'Hair was transferred so that it could not be reached. Manifestly, the undue influence of Jane O'Hair was exerted to procure the conveyance to her and for her own benefit. So far as appears, she was not concerned except in obtaining the house and lot on Jefferson avenue for herself, and if that conveyance was secured without consideration, through undue influence, it might have been set aside.

So far as Palmer was concerned, there was no dependent or confidential relation between him and Elledge and no misrepresentation or imposition. On the question of setting aside the deed without restoring the consideration, the only argument that can be made is that the consideration paid by Palmer was inadequate. There was a great variety of opinion among the witnesses as to the value of the respective pieces of property, but there is no doubt that the exchange was quite an advantageous one for Palmer. Considering all the evidence, the advantage to him in the exchange was probably $500 to $1000, but we are inclined to the view that the consideration was not so grossly inadequate as to afford evidence of wrongdoing or bad faith on the part of Palmer, so as to justify depriving him of the consideration. So far as he knew, Elledge was entirely competent to deal independently and to agree upon the consideration for his property. It is conceded that the inadequacy of consideration, in combination with all the other circumstances, justified the court in setting aside the conveyance, but we cannot say that the court was in error in requiring the money paid and the property conveyed, or the value thereof, to be restored.

The decree of the circuit court is affirmed.

*Decree affirmed.*