JAMES F. BROWN *vs.* MARY E. BROWN, executrix, & another.

Suffolk.    May 15, 1911. — June 21, 1911.

Present: MORTON, HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Equity Pleading and Practice*, Appeal, Parties, Discretionary powers of master, Master's report. *Equity Jurisdiction*, To set aside conveyance for unsoundness of mind and undue influence. *Executor and Administrator.* *Evidence*, Of mental condition, Presumptions and burden of proof, Opinion: experts. *Joint Tenants and Tenants in Common.*

A defendant in a suit in equity has no ground for appeal from a decree which grants no relief against him and allows him his costs.

A son of a deceased father can maintain a suit in equity against a sister and a brother of the plaintiff, the three being all the children and all the heirs at law of the deceased and the defendant sister being the executrix of the father's will, to set aside conveyances of real estate which were made by the deceased to his daughter when he was insane and which were neither ratified nor avoided by the father during his lifetime, the executrix of the will having no power to ratify such a deed to the prejudice of the heirs of the testator.

In a suit in equity, by a brother against his sister, to set aside a conveyance of real estate alleged to have been made to the defendant by the father of the plaintiff and the defendant when he was insane and under the undue influence of the defendant, where it appears that the father had died, that his will, of which the defendant is executrix, was allowed and that the deed sought to be set aside was made seven years before the date of the will, and a master has found that the deceased was of unsound mind when he executed the deed, that after executing it he at times appeared to be rational but that his disease continued, that he was at no time free from it after giving the deed and that the influence of his daughter over him also continued, the fact of the allowance of the will is not conclusive of the issue in the case, but merely shows that the testator when he executed it was of sufficiently sound mind to make a will.

Where a suit in equity, to set aside a conveyance of real estate made to the defendant by a person deceased on the ground of the grantor's unsoundness of mind and of the undue influence of the defendant upon the grantor when the deed was made, is referred to a master, it is the province of the master to fix the limit of the time relating to which evidence of the grantor's mental condition will be received by him. In the present case it was held that the master could not be said to have gone too far in the exercise of his discretion in admitting evidence of the grantor's mental condition covering a period of eight years after the making of the deed sought to be set aside.

On an exception in a suit in equity to the admission by the master to whom the case was referred of a hypothetical question to an expert, if all the facts assumed in the question were found by the master to have been proved and there was no error of law, the exception will be overruled, although the question was needlessly long and complicated.

The rule, that the occupation of land by one tenant in common is not adverse to his

co-tenants and creates no liability to them, does not apply where one co-tenant wrongfully has ousted the others and has compelled them to resort to the courts to establish their rights.

Where one tenant in common of land wrongfully has ousted his co-tenants, his liability to them to account for his occupation is the same whether he occupied the property in person or received rent for it from others.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 17, 1904, alleging that the plaintiff and the two defendants were the children and the only heirs at law of James Brown, who died on September 27, 1901, leaving a will, dated May 7, 1900, which was proved and allowed by the Probate Court of Suffolk County on December 26, 1901; that the defendant Mary Elizabeth Brown was appointed executrix and that her official bond as executrix was approved and filed on or about December 26, 1901, due publication of her appointment being made thereafter; that James Brown in his lifetime had executed deeds, conveying real estate to the defendant Mary Elizabeth Brown, as follows: on December 31, 1890, a deed by which he conveyed certain real estate on West Newton Street in Boston, therein specifically described; on March 20, 1893, a deed by which he conveyed certain real estate situated on Webber Street in Boston, therein specifically described; on March 20, 1893, a deed by which he conveyed certain real estate situated on Dudley Street, formerly Eustis Street, in Boston, therein specifically described; on March 20, 1893, a deed by which he conveyed certain real estate situated on Eustis Street in Boston therein specifically described; that at the time of the filing of the bill all the deeds were recorded in the Suffolk registry of deeds; that the plaintiff was informed and believed that at the time of the execution of these deeds James Brown conveyed and transferred to Mary Elizabeth Brown all the property owned or possessed or controlled by him with the exception of one sixty-fourth interest in certain vessels, the income from which was not sufficient for his support; that the plaintiff was informed and believed that at the time of the execution of these deeds James Brown was incapable of executing any instrument, being aged, sick and infirm, and that his mental powers were so weakened and impaired by age and sickness that he was wholly incapable of transacting the business or executing and delivering a deed of his property; that the defendant Mary

Elizabeth Brown, while knowing his mental incapacity, took advantage to coerce him and unduly influenced him to make such conveyances, and that all the deeds were given without consideration; that the plaintiff was informed and believed that previous to the failure of his mental powers James Brown was of prudent disposition and carefully protected all his interests in this real estate, but that at and after the time of executing the deeds he was incapable of exercising rational volition, and that by these conveyances he was deprived of all means of support, with the exception of his interest in said vessels; that his mental incapacity continued down to the date of his death; that the plaintiff was informed and believed that both the defendants resided on the real estate on Dudley Street mentioned above, that the defendant Mary Elizabeth Brown constantly from March 20, 1893, had made those premises her home, and that the defendant William F. Brown during the greater part of the period had occupied the premises with his sister; that both the defendants had enjoyed and used the income from all the property conveyed as above set forth, and at the time of the filing of the will still were enjoying and using such income, but that the plaintiff had never received any part of such income, nor enjoyed the use or occupation of any of the property; that the defendant Mary Elizabeth Brown, although often requested by the plaintiff, had refused the use or occupation of such premises or the income thereof to the plaintiff; that the plaintiff had no knowledge of the execution of the deeds set forth above until after the death of James Brown, when the defendant Mary Elizabeth Brown first informed the plaintiff of the transfers of said property; that thereupon the plaintiff demanded his third interest in all of said property as heir at law of James Brown, and that the defendant Mary Elizabeth Brown promised and agreed with the plaintiff that she would release to him one third part of all said property upon the expiration of two years after the giving of her bond as executrix of the estate of James Brown, during which time she claimed the right to use said property, or the income thereof, for the payment of the debts of James Brown; that thereupon the plaintiff consented to wait until the expiration of the period of two years before demanding his interest; that upon the expiration of said period, and up to the bringing of the bill, the plain-

tiff had many times requested Mary Elizabeth Brown to release to him by proper deeds one third interest in all of the property, but that the defendant Mary Elizabeth Brown had refused to make such transfer and conveyance.

After averments in regard to the estimated net income from the property, the bill prayed, first, that a preliminary injunction might be issued, restraining the defendant Mary Elizabeth Brown from collecting any of the rents or profits of any of the properties set forth and described in the bill, and also from transferring, mortgaging, conveying, or in any way disposing of the aforesaid properties; second, that a proper person might be appointed receiver to take charge of and manage all the property described in the bill; third, for an adjudication that James Brown, when he made and executed the aforesaid deeds, was incapable of exercising a rational volition and was coerced and unduly influenced by the defendant Mary Elizabeth Brown and that the above described deeds were null and void and should be delivered up and cancelled, and also that the decree of the court adjudging the deeds to be null and void might be placed on record in the registry of deeds for the county of Suffolk; and fourth, that the defendant Mary Elizabeth Brown might be ordered to execute her release and quitclaim deed of the above described property, to the end that the cloud should be removed from said titles, and for further relief.

The case was referred to Winfield S. Slocum, Esquire, as master. He filed a report in which he found, first, that James Brown was not of unsound mind when he executed the first deed, dated December 31, 1890; second, that he was of unsound mind when he executed the three deeds, dated March 20, 1893; third, that after executing these deeds James Brown at times appeared rational, talked about the deeds, showed knowledge of what he had done, and stated why he conveyed the property to his daughter; that his disease, however, continued and that he was at no time free from it after the giving of the deeds; that the influence of his daughter described in the report also continued. The report further stated: " I do not find that he [James Brown] ratified said deeds. . . . I find that the plaintiff has not been guilty of laches."

Both of the defendants and also the plaintiff filed objections

and exceptions to the master's report. The case was heard by *Rugg*, J., upon the exceptions to the master's report and certain motions of the defendants, which are stated in the memorandum of decision. That memorandum, omitting the cases cited, was as follows:

" 1. I deny the motion of the defendants to dismiss the suit, which is based on the ground that such suit can be maintained only by the executor or administrator. All the heirs at law and the executrix are parties to this suit, the executrix being one of the defendants and having in this respect an interest personal to herself, which is inconsistent with impartial action in her representative capacity. No objection appears to have been [made] on the ground of parties until after the report of the master was filed.

" 2. The defendants' motion to discharge the master's report, because he received evidence of the mental condition of the deceased covering a period of eight years after the event under inquiry, is denied. While this was a long time, and, so far as the court can determine, a wiser discretion would have been exercised in confining the evidence within narrower limits, nevertheless it cannot be said to be so plainly wrong as to warrant a recommittal, nor does it appear that the defendants have suffered harm.

" 3. The motion of the defendants for an order that all the evidence be reported is denied. This does not appear to be one of the cases where the ends of justice would be promoted thereby.

" 4. The plaintiff's motion to recommit to the master for further findings on the questions of undue influence raised by the pleadings is denied. The report sets out the facts as to coercion and undue influence, and I rule that, so far as the deed of January 8, 1891, is concerned, they do not amount to such coercion or undue influence as will avoid the deed. Any finding upon this matter as to the subsequent deeds has become immaterial.

" 5. The exceptions of both the plaintiff and the defendants to the master's report appear to be grounded either upon matters of evidence, as to which the master heard oral testimony and as to which his finding respecting weight and credibility will not ordinarily be disturbed, or upon matters which appear to be im-

material in view of other findings of the master. They are all overruled.

"Let a decree be entered in accordance with this memorandum."

Later, upon a motion for an interlocutory decree, the justice made a further decision of which his memorandum was as follows:

"This cause came on to be further heard upon motion for decree. It was urged by the defendant that by drawing proper inferences from the facts found by the master the plaintiff ought not to prevail. But I find that the inferences fairly to be drawn from the facts found by the master, together with those facts, require the entry of a decree for the plaintiff.

"I do not find that the plaintiff manifested to the defendant a determination to set aside the deeds of property made to her by his father, and I do not find that he made demand upon her for conveyance of his share of the real estate, until November 8, 1904.

"The cause may be recommitted to the master for the purpose of stating the account as to rents and profits received by the defendant of all real estate conveyed to her by deed of her father in 1893, and the fair rental value, net, of the property so conveyed actually occupied by her."

An interlocutory decree accordingly was made, from which the defendants appealed.

The master filed a supplemental report, after which the justice made a final decree, first, that all the conveyances through and under which the defendant Mary Elizabeth Brown obtained property from her father James Brown on March 20, 1893, were null and void so far as the plaintiff was concerned; second, that the master's report on the subject matter of the accounting be confirmed; third, that the defendant Mary Elizabeth Brown pay to the plaintiff the sum of $1,580.76, and that the plaintiff should have execution therefor; fourth, that the plaintiff should recover his costs against the defendant Mary Elizabeth Brown, and that the defendant William F. Brown should recover his taxable costs against the plaintiff.

The defendants appealed from the final decree.

The case was submitted on briefs.

*S. H. Tyng*, for the defendants.

*J. M. Hall*, for the plaintiff.

SHELDON, J.   This appeal is without merit.

1. No relief was given against the defendant William F. Brown, but he was allowed his costs.   As to him, the bill was in effect dismissed, and he has no ground of complaint.

2. The plaintiff can maintain the suit.   All the heirs of the original owner and the executrix of his will are made parties. In her personal capacity the executrix is the sole defendant in interest.   It is settled by our decisions that the deed of an insane person is ineffectual to convey a title to land which shall be good against the grantor himself or against his heirs or devisees, unless it is confirmed by the grantor, when of sound mind, or by his guardian, or after his death by his heirs or devisees.   *Valpey* v. *Rea*, 130 Mass. 384, and cases cited.   *Brigham* v. *Fayerweather*, 144 Mass. 48.   *Busiere* v. *Reilly*, 189 Mass. 518.   As to undevised property, the rights of heirs are not affected by a will.   In such a case, if the deed has been neither ratified nor avoided in the lifetime of the grantor, his heirs may avoid it after his decease ; if the invalid deed was made to one of his heirs, the other heirs or any one or more of them according to their respective interests may avoid it in like manner. *Parker* v. *Simpson*, 180 Mass. 334.   *Caverly* v. *Simpson*, 132 Mass. 462.   *Sunter* v. *Sunter*, 190 Mass. 449.   See *Billings* v. *Mann*, 156 Mass. 203.   The executor of his will or the administrator of his estate has no power to ratify such a deed to the prejudice of his heirs; *Wilcox* v. *Forbes*, 173 Mass. 63 ; much less can he do so to the prejudice of the other heirs if, being himself an heir, he is also the wrongful grantee named in the deed.   This is not the case of the ratification of a contract relating to personal property by which an ordinary indebtedness or liability is created, to be enforced primarily against the executor himself, and against the heirs only under the provisions of R. L. c. 141, § 26, as was the case in *Bullard* v. *Moor*, 158 Mass. 418.   See *Forbes* v. *Douglass*, 175 Mass. 191.

3. No question of ratification by the grantor arises in this case, for his incapacity not only continued but increased continuously until his decease.   *Gibson* v. *Soper*, 6 Gray, 279, 281.

4. The probate of the will merely shows that the testator was

of sufficiently sound mind to make the will; it is not conclusive evidence on the issue in this case. *Gibson* v. *Soper*, 6 Gray, 279. *Sly* v. *Hunt*, 159 Mass. 151.

5. None of the master's findings are shown to have been plainly wrong, and we find no error in any of his reported rulings. See *Long* v. *Athol*, 196 Mass. 497, 508; *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, 203; *Atherton* v. *Emerson*, 199 Mass. 199, 211. It was for him to fix the limits of time for evidence of the grantor's mental condition. While he might have made those limits narrower, still it must be remembered that the possibility of a ratification of the deeds was to be passed upon, and we cannot say that he went too far. See *Hardy* v. *Martin*, 200 Mass. 548; *Jenkins* v. *Weston*, 200 Mass. 488; *Howes* v. *Colburn*, 165 Mass. 385; *McCoy* v. *Jordan*, 184 Mass. 575. The hypothetical question put to the experts was needlessly long and complicated, and might have been excluded on that ground; but all the assumed facts were found by the master to be proved, and there was no error in law in admitting the question.

6. The defendants do not deny that the plaintiff, upon avoidance of the deeds, is entitled to a share of the net income received from the rented estates; *Robinson* v. *Robinson*, 173 Mass. 233, 239; but they contend that this is not so as to the Vine Street property, because that has been occupied by themselves. This is on the ground that bare occupation by one tenant in common creates no liability to his co-tenants. *Badger* v. *Holmes*, 6 Gray, 118. *Sisson* v. *Tate*, 114 Mass. 497, 501. *Kirchgassner* v. *Rodick*, 170 Mass. 543, 545. *Carroll* v. *Carroll*, 188 Mass. 558. But this does not apply where one co-tenant has ousted his co-tenants, and compelled them to resort to the courts to establish their rights. That is this case. *Silloway* v. *Brown*, 12 Allen, 30, 37, 38, and cases there cited. The female defendant's liability is the same whether she occupied the property in person or received rent therefor from others, just as in *McIntire* v. *Mower*, 204 Mass. 233, 237, 238.

7. As the defendants say in their brief that they waive none of the questions raised on the record, we have examined everything so presented; and we are clearly of opinion that there has been no error prejudicial to either defendant.

The final decree must be modified by charging each defendant with the costs of this appeal, and by charging the female defendant with interest upon the sum ordered to be paid by her from and after the date of that decree. R. L. c. 177, § 8. So modified, that decree must be affirmed.  .

*So ordered.*