WILLIAM HASSEY v. GEORGE W. WILLIAMS, *et ux.*

174 Sou. 9.
Division A.
Opinion Filed April 19, 1937.

*Lambdin & Ramseur,* for Appellant;

*Roy V. Sellers,* and *Wm. G. King,* for Appellee.

TERRELL, J.—In July, 1934, appellee as complainants filed the bill of complaint herein to cancel a deed of conveyance previously executed by them to the defendant, appellant here, describing a certain lot in St. Petersburg, Florida, on which was located a small dwelling. The bill was amended, a motion to dismiss was overruled, answer was filed, testimony was taken, and on final hearing the Chancellor found for the complainants and decreed accordingly. A rehearing was denied and defendant appealed.

Six questions are urged for our consideration but all turn on the question of the sanity of the complainant, Bulah Williams.

After the bill of complaint was filed but before final decree, a suggestion of the insanity of the complainant, Bulah Williams, was entered. A guardian *ad litem* was appointed for her and he filed a supplemental bill in which he averred that she was on the sixteenth day of September, 1918, her name then being Bulah Crews, adjudged to be insane by the County Judge of Columbia County, that said adjudication has never been vacated or cancelled but is still in force and effect, that complainant, Bulah Williams, has never been restored to civil rights and has since the date

of her adjudication to be insane been incapacitated to perform any business transaction.

To this supplemental bill, the defendant, William Hassey, filed an answer in which he denied that he was guilty of any imposition, fraud, or undue influence on complainants. He averred that Bulah Williams was discharged from the State Hospital for the Insane at Chatthoochee in 1919 as cured, that she subsequently moved to Pinellas County and entered into a contract of marriage with the complainant, George W. Williams, that she has lived in such marital relation for more than fifteen years, reared a family, bought and sold property, transacted business, and has at all times conducted herself as a person of sound mind. Hassey denied that he had knowledge or notice of any mental weakness on the part of Bulah Williams, that he paid complainants a full, fair, and adequate consideration for the property and was a *bona fide* purchaser thereof.

On the issue thus made, the Chancellor entered his final decree, adjudicated the deed in question to be void and as conveying no title on the ground that the complainant, Bulah Williams, was wholly incapable of performing any business transaction, or in any manner dealing with or charging her property in law or equity. He found the lands described in the deed to be owned by the complainants as husband and wife by the entireties and to be used by them as their homestead.

The evidence discloses that in March, 1934, the complainants employed a real estate agent by the name of H. T. Fritts to trade or sell the property in question, that Fritts contacted a real estate broker named C. A. Eastman who represented the defendant Hassey and after negotiations, Hassey agreed to pay $650.00 cash for the property. Hassey's offer was accepted and Eastman paid Fritts $50.00 for

Hassey to bind the bargain.. An abstract was secured, the title approved, and the transaction was closed. Eastman, acting for Hassey, delivered to Fritts as the agent of complainants two checks, one for $401.35, and one for $140.85, both payable to complainant, G. W. Williams. Prior to this payment, Eastman had paid $59.50 for taxes on the lands and certification of abstract and $7.50 on the purchase price. Fritts as agent delivered to George W. Williams the check for $140.85, Williams endorsed and cashed this check and joined by his wife, Bulah Williams, executed a warranty deed to the property. The deed was delivered to Fritts who delivered it to Eastman and he in turn delivered it to Hassey.

Complainants actually received through Fritts Hassey's check for $140.85, and the discharge of the tax liens against the lands in the sum of $50.70, making a total of $191.55, while the check for $401.35, the check for $50.00, given as a binder, and the check for $7.50, in all $458.85, were endorsed by complainant's agent, Fritts, and converted to his own use. He later gave complainants his personal check for this amount but it was not paid when presented for payment. Fritts was employed by complainants, they gave him full power to act for them, and they directed Eastman, Hassey's agent, to confer with and pay the purchase price of the lands to him. Hassey was an innocent purchaser for value and this suit was not brought until after Fritts converted the proceeds of the sale to his own use.

A few cases hold that the deed of an insane or feeble minded person is void *ab initio* and that an innocent purchaser has no recourse against it but the decided weight of authority is to the effect that such a deed is not void but voidable only depending on whether or not an inequitable advantage, fraud, or want of consideration was practiced on

the grantor or whether the grantee had knowledge of the grantor's insanity. Douglas v. Ogle, 80 Fla. 42, 85 So. 243; Sheppard v. Cherry, 118 Fla. 473, 159 So. 661; French Lumbering Company v. Theriault, 107 Wis. 627, 83 N. W. 927, 81 Am. St. Rep. 856, 51 L. R. A. 910; Green v. Hulse, 57 Col. 238, 142 Pac. 416; Walton v. Malcolm, 264 Ill. 389, 106 N. E. 211; Downham v. Holloway, 158 Ind. 626, 64 N. E. 82, 92 Am. St. Rep. 330; Brown v. Brown, 209 Mass. 388, 95 N. E. 796; Smith v. Ryan, 191 N. Y. 452, 84 N. E. 402; Huhrs v. Hancock, 181 U. S. 567; 45 L. Ed. 1005, 21 Sup. Ct. 726; Delvin on Deeds, Vol. 1, Sec. 73; Jones on Real Property, Vol. 1, Sec. 52; Washburn on Real Property, fifth edition, 486; Kerr on Real Property, Sec. 2316.

This court is committed to the rule that mere mental weakness will not authorize a court of equity to set aside a deed if such weakness does not amount to inability to comprehend the effect and nature of the transaction and is not accompanied by evidence of imposition or undue influence. The presumption always supports the validity of the deed and the sanity of the grantor until overcome by a preponderance of the evidence. The deed will under no circumstances be voided unless proven that the mind of the grantor was so affected as to render her incapable of comprehending the nature and effect of the transaction. Clarke v. Hartt, 56 Fla. 775, 47 So. 819; Waterman v. Higgins, 28 Fla. 660, 10 So. 97; Travis v. Travis, 81 Fla. 309, 87 So. 762; Baars v. Alger Sullivan Lumber Co., 81 Fla. 308, 87 So. 918.

The amended bill of complaint does not charge or rely on insanity or mental incapacity to overthrow the deed, the evidence does not support insanity and in fact we find nothing in the record to support the defence of insanity

except the adjudication of the County Judge of Columbia County made in September, 1918.

Such an adjudication is entirely inadequate against the subsequent showing that complainant was about one year later discharged from the hospital for the insane at Chattahoochee as cured, that after her discharge she secured a divorce from her then husband, resumed her maiden name of Bulah Turner, moved to Pinellas County where on the twenty-third of April, 1921, she contracted marriage with her co-plaintiff, George W. Williams, reared a family, conducted business transactions and so far as the record shows, had exemplified no further sign of mental derangement at the time she executed the deed.

In the case at bar, there is no charge or suggestion that George W. Williams, the co-complainant, was incapacitated to make the deed and the evidence shows conclusively that Bulah Williams knew what she was doing when she executed it and that she executed it freely and voluntarily. It is further shown that the consideration paid was fair and adequate, that the conveyance was entered into in good faith, without fraud or imposition being practiced on complainants, and that the grantee had no notice of any infirmity in the deed or in either of the grantors.

Under such circumstances, the overwhelming weight of authority is to the effect that a deed so executed will not be set aside at law or in equity in favor of the grantor or his representatives except on condition that the price paid be restored to the grantee and the parties placed back in the condition they were before the transaction. Farrior v. Hughes-Law Lumber Co., 113 Fla. 209, 151 So. 377; Sheppard v. Cherry, 118 Fla. 473, 159 So. 661; Riggan v. Green, 80 N. C. 236, 30 Am. St. Rep. 77; Eaton v. Eaton, 37 N. J. L. 109; Gribben v. Maxwell, 34 Kan. 8, 7 Pac. 584; El-

dredge v. Palmer, 185 Ill. 618, 57 N. E. 770; 32 C. J. 734; Pomeroy's Equity Jurisprudence, Vol. II, page 465; 14 R. C. L., Sec. 49.

In their amended bill, complainants offered to restore Hassey to *status quo* to the extent of the sum received by them or so much thereof as the court shall decree they pay on cancellation of the deed and restoration of the property to complainants.

Restoration to *status quo* under the facts of this case can mean nothing short of returning to Hassey the full amount he paid Fritts, the agent of complainants. Fritts had full authority to act for them, he acted within the scope of his authority and the complainants were bound by his conduct.

The Chancellor should have denied the relief sought or he should have decreed that the deed be cancelled on condition that complainants restore to Hassey the full amount paid Fritts and that if not restored within a reasonable time, that he be adjudicated to have a lien on the property described in the deed for its payment.

The judgment below is accordingly reversed for the entry of a final decree in conformity with this opinion.

Reversed.

ELLIS, C. J., and BUFORD, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.