**R. S. WINDHAM v. HELEN WINDHAM**

11 So. (2nd) 797                                          January Term, 1943
February 5, 1943                                              Division A
Rehearing Denied February 25, 1943

*Bell & Bell* and *W. D. Bell,* for appellant.

*Mabry, Reaves, Carlton & White,* for appellee.

CHAPMAN, J.:

The parties to this suit were husband and wife from 1904 until October 3, 1939, when a decree of divorce was entered by the Circuit Court of Charlotte County, Florida. The parties pooled their finances, labor and industry and acquired property and some of it was set to citrus trees. The legal title to the property rested in Helen Windham. The Federal Land Bank appears to have held a mortgage at one time on the property, or a part of it. The decree of divorce held that the parties were tenants in common and each owned an undivided one-half interest. The decree on appeal was affirmed by this Court. See Windham v. Windham, 144 Fla. 563, 198 So. 202.

Afer the entry of the decree in the lower court and before it was passed upon by this Court, on December 18, 1939, R. S. Windham, conveyed his interest in and to the real property previously owned to his former wife, Helen Windham, for the consideration of five hundred dollars. In July, 1941, he filed a bill of complaint in the Circuit Court of Charlotte County, Florida, in which he offered to return to Helen Wind-

ham, for the sum of $500.00 previously paid him by her, and prayed for a decree requiring her to reconvey to him his interest previously conveyed by the deed dated December 18, 1939, or canceling the same on the grounds: (1) inadequacy of consideration; (2) the grantor at the time of the conveyance was mentally incompetent to transact business; and (c) because of false and fraudulent misrepresentations made by Helen Windham to the grantor concerning a mortgage on the described land and the possibility that a deficiency decree might be entered against him. These allegations were denied by an answer and testimony was taken before the chancellor on the issues made by the pleading, when the chancellor entered a decree dismissing the bill of complaint. An appeal therefrom has been perfected to this Court.

It is contended that the property conveyed had a value of approximately $10,000.00, and as the amount received by the grantor was only $500.00, inadequacy of consideration is apparent and a court of equity, on the testimony adduced, should decree a cancellation of the deed on the theory that inadequacy of consideration, *ipso facto,* is a badge of fraud. It is possible that such a contention would have merit in a controversy between a grantor and a judgment creditor and come within our holding in the case of Weathersbee v. Dekle, 107 Fla. 517, 145 So. 198, but in the case at bar such a relation is not sustained by the record. We are here requested to hold a transaction between two parties fraudulent because of a badge of fraud, to-wit, inadequacy of consideration. We cannot under the law rewrite a contract between parties or interfere with the freedom of contract or substitute our judgment for that of the parties when an apparent improvident bargain has been entered into. See Smith v. Homeseekers' Realty Co., 97 Fla. 236, 122 So. 708, 67 A. L. R. 807; International Realty Associates, Inc. v. McAdoo, 87 Fla. 1, 199 So. 117.

Several witnesses adduced by the appellant testified that the property was worth approximately $10,000.00. It consisted of two small groves and two rental houses located in Punta Gorda. The defendant below testified that the fruit

sold from the Klondike Grove and the grove situated on Alligator Creek was not sufficient to pay the taxes, fertilizer, and pruning of the trees, or to cultivate the same. The amount received appears in the record. The rentals accruing from the houses were inconsequential. The chancellor below concluded that the net income of property is a criterion as to its value. We are not justified in interfering with the ruling on this contention on the showing here made.

It is next contended that the conveyance should be cancelled and the parties restored to their *status quo* because of the mental weakness of R. S. Windham when the conveyance was made. Conflicts and disputes appear in the testimony on this point. Several witnesses testified, after observation of the grantor, that he was mentally abnormal when the deed was executed and delivered. A bank official and employee assisting in closing the transaction between the parties testified that R. S. Windham was in his usual normal mental condition. A physician had treated appellant for nausea and nervousness. It is not contended that Windham, at the time of the payment of the money and acceptance of the deed, was *non compos mentis,* but only mentally weak caused by illness and domestic trouble. It has been held that inadequacy of consideration, coupled with a degree of mental weakness, if clearly established by the testimony, will furnish sufficient ground for equitable interference. See 12 C.J.S. 976, par. 26. If the evidence clearly established inadequacy of consideration and mental weakness when the transaction was had, then a court of chancery could by appropriate decree or order grant restitution. The appellant refused to accept a check for the deed and insisted upon payment of cash to him before he delivered the deed. He consented to ride to the bank to close the deal, provided they paid him the cash and returned him to the place where he entered the car. The bank officer and employee participating in closing the trade when they were in the bank at Punta Gorda, observed the appellant, who had transacted business with the bank at intervals over a considerable period of time, and each expressed the view that he was in his usual normal mental condition. In other words, they were not able to discern a different mental capacity or

attitude on the part of Mr. Windham at the time of signing and delivering the deed and accepting and counting five hundred dollars in currency and signing and delivering a receipt therefor, than at any other time since each had known him.

On December 8th, 1939, R. S. Windham wrote Helen Windham and said: "I will give you the old place and the lots in town and $500 if you will give me Klondike with the crops on it. · Or I will take the lots in town and the old place and $500.00 and give you Klondike with the crops on it." On December 12, 1939, Helen Windham, by letter, declined the offer of R. S. Windham. In the same letter she stated that "The bank yet may come in and take your interest in the property under the foreclosure suit; I don't want to take chances on that." She, in the same letter, offered him $500 for his interest in the property and, six days thereafter, R. S. Windham gave her a deed and received the $500. The appellee filed notice of her appeal to the Supreme Court of Florida from the final decree dated October 3, 1939, and R. S. Windham filed cross assignments of error and, after the payment of the $500.00 and receipt of a deed, she declined to perfect her appeal and R. S. Windham perfected the appeal with an understanding with Helen Windham that she would not contest the same on appeal and the decree would be reversed leaving the parties husband and wife as desired by R. S. Windham and the several transactions constituted false representation, justifying an equitable interference.

The law did not require R. S. Windham to rely exclusively on the statements in letter of Helen Windham under date of December 12, 1939. The existence or non-existence of the mortgage lien could not have been settled by an examination of the records of Charlotte County. The probability of a definiency judgment called for an opinion of counsel which does not appear to have been sought and a dispute about the contest in the Supreme Court appears in the record.

The representation in the letter of December 12, 1939, recites: "As you know, the bank may yet come in and take your interest in the property under the foreclosure suit and I don't want to take chances on that." It cannot be said

that Helen Windham intended that R. S. Windham should depend on her legal opinion. The appellant at the time had engaged able counsel to represent him. The advice of counsel and a study of the record would have thrown much satisfactory light on the question raised by Helen Windham. See Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 So. 893; Byrd v. Smith, 114 Fla. 24, 152 So. 851.

It is contended that the inadequacy of consideration, mental weakness and the false and fraudulent misrepresentations alleged to have been made by Helen Windham to R. S. Windham are each established by the testimony and controlled by the principle of law enumerated by 12 C.J.S. page 976. We cannot agree to this conclusion. We think there is substantial evidence in the record to sustain the findings of the chancellor and it is our duty under the law to affirm his conclusion. See Farrington v. Harrison, 95 Fla. 769, 116 So. 497; Kent v. Knowles, 101 Fla. 1375, 133 So. 315.

The decree appealed from is hereby affirmed.

BUFORD, C. J., TERRELL, and ADAMS, JJ., concur.