## RICCA v DOHERTY

### Case No. 87-13777 CX

Seventeenth Judicial Circuit, Broward County

July 14, 1989

### APPEARANCES OF COUNSEL

**Michele Kane Cummings,** for plaintiff.

**Grafton N. Carlson,** for defendant.

### OPINION OF THE COURT

ROBERT C. SCOTT, Circuit Judge.

### *FINAL JUDGMENT*

This action, tried before the court on April 11-12, 1989, is a claim for specific performance concerning the contract for sale of a parcel of real property located at 1533 Tyler Street, Hollywood, Florida. Although wrought with complex theories for recovery, when boiled down to the relevant facts, this is a relatively simple case. Upon the evidence presented at trial, the court finds and determines as follows.

### *FINDINGS OF FACT*

On December 1, 1986, WILLIAM H. DOHERTY, seller, and BELA KISS, buyer, entered into a Deposit Receipt and Contract for the Sale and Purchase (hereinafter referred to as the Contract) of a parcel of real property and residence located at 1533 Tyler Street,

Hollywood, Florida. The Contract was executed by DOHERTY and KISS in the office of DOHERTY's attorney, RUDOLPH M. DILASCIO, JR. and was witnessed by DOHERTY's friend, LUCILLE LOUTH. The Contract called for a price of $51,000 consisting mainly of the assumption or pay off of the existing mortgage of $45,000 and with DOHERTY realizing approximately $5,000 above the mortgage.

Subsequently, on February 11, 1987, KISS assigned, transferred, and conveyed his interest under the Contract to LEWIS RICCA. When the time for closing arrived, which had been extended past March 2, 1987, DOHERTY refused to close and attempted to rescind the Contract on the basis that it was invalid due to mistake as he was suffering from diminished mental capacity.

RICCA subsequently filed a complaint for specific performance which is the subject matter of this trial. DOHERTY filed an answer, counterclaim, and third party complaint against KISS.

On December 8, 1987, Doherty died and the personal representative of the his estate, JUDITH A. RORK was substituted as Defendant.

Several witnesses testified that DOHERTY intended to sell his property so as to realize $51,000 above and in addition to the assumption of the existing mortgage of $45,000 which would equal a total purchase price of approximately $96,000. The testimony of ELLEN ZATERAIN, LUCILLE LOUTH, and JUDITH RORK, all acquaintances of DOHERTY, was that upon entering into the Contract with KISS, DOHERTY announced that he had sold his property to realize $51,000 above the mortgage. DOHERTY's attorney, DILASCIO, stated that DOHERTY was shocked when he found he was only going to realize $5000 from the sale of his property.

The purchase price in 1983 paid by DOHERTY for the property in question was $102,500. Evidence showed that DOHERTY had previously listed the property with two real estate agents for $119,000. Prior to the sale to KISS, DOHERTY had entered into a lease with option to purchase for a selling price of $112,000, which did not expire until September 3, 1986. ROBERT COOPMAN, DOHERTY's appraiser, testified without objection and without cross-examination that the value of the property was $94,000 as of December 1, 1986 (the date the Contract was executed). Plaintiff's witness, BILL WATSON, a representative of California Federal testified that the appraised value of the property was $99,000.

In support of DOHERTY's theory of diminished capacity, testimony was presented by RICHARD LEVINE, M.D., a psychiatrist and

120

STEPHEN L. ROTH, M.D., and HOWARD J. BARREN, M.D., internists familiar with the mental problems of the elderly.

LEVINE, who examined DOHERTY prior to the date of the Contract, stated in a deposition admitted into evidence: " . . . he will not and should not be allowed to live alone and is incompetent to handle his funds. It appears that Mr. Doherty has a chronic dementia secondary to alcohol abuse and intellectually will not improve."

BARREN, an internist, was DOHERTY's treating physician and saw him approximately one month before the Contract was entered into and approximately one month after it was entered into. BARREN stated in a deposition that he did not foresee DOHERTY's mental status improving at any time.

STEPHEN ROTH, also an internist, saw DOHERTY roughly three weeks after the Contract was entered into. When asked at a deposition to tell within a reasonable degree of medical probability what his expert opinion of DOHERTY's mental status was on the date the Contract was entered into, ROTH stated: . . . "Mr. Doherty suffered from what we term an organic brain syndrome. He suffered from dementia. His mental capacity was not normal in that he could not remember. . . . He was incapable really of governing himself from a mental point of view."

The court is convinced that the medical examinations occurred before and after the date of the subject Contract, at times which were close enough to the contract date to accurately diagnose DOHERTY's condition at the time of the contract.

LEVINE explained that DOHERTY's dementia was characterized by confabulatory behavior where answers to questions were made up, thus letting it appear to non-medical experts that DOHERTY was competent to contract.

Several lay witnesses echoed and reinforced the reports of the medical experts. LUCILLE LOUTH, the woman who accompanied DOHERTY to the execution of the Contract, is a friend of Doherty's and takes nothing from the estate. She testified that DOHERTY was "mentally off" on December 1, 1986. JUDITH RORK, niece of DOHERTY and personal representative of his estate, takes a small interest in the estate. She testified that on December 1, 1986, DO-HERTY seemed "out of it." ANITA MORGAN, a neighbor of DOHERTY, takes nothing from the estate. She met with DOHERTY three times from January 10 through the end of February of 1987 (60-90 days after the Contract was executed) and found DOHERTY to be "confused, disoriented and in la-la land."

Again, except for LOUTH and RORK, although none of the above-mentioned lay witnesses were able to testify as to DOHERTY's mental functioning on the exact date the Contract was executed, the court finds the time periods sufficiently bracketed the Contract date as with the expert witnesses.

## CONCLUSIONS OF LAW

A valid contract requires the capacity of the parties. *Hogan v Supreme Camp of the American Woodman,* 1 So.2d 156, 146 Fla. 413 (Fla. 1941). The accepted test in Florida for determining whether a particular infirmity operates to render a personal incapable of contractually binding himself is whether his mind has been so affected as to render him incapable of understanding the nature and consequences of his acts and the character of the transaction in question. *Donnelly v Mann,* 68 So.2d 584 (Fla. 1953); *Hassey v Williams,* 127 Fla. 734, 174 So. 9 (Fla. 1937).

In *Hartnett v Lotauro,* 82 So.2d 362 (Fla. 1955), a leading Florida case regarding capacity to contract, the Florida Supreme Court addressed a factual situation similar to ours. At the trial level, the case was referred to a general master who made the following findings: The property in question was valued at $13,000. Plaintiff, seller, initially offered it at $10,000 and then reduced it to $7000 without suggestion by the buyer. The testimony of doctors who examined the seller established that "Plaintiff's comprehension, reasoning and intelligence were impaired." One doctor stated that Plaintiff might "fool any person relative to his condition."

The general master reported:

The testimony of doctors, the improvidence of the transaction sought to be rescinded itself, are convincing evidence that Plaintiff's mentality was impaired throughout the period of the transaction. The fact, agreed on by Plaintiff and Defendants, that in offering the property and fixing the price Plaintiff offered it at $10,000.00 and reduced the price of $7,000.00 without suggestion by Defendants, indicates mental stability. The value, $13,000.00, compared with the price sold for, $7,000.00, is significant.

Finally the general master concluded:

Based upon the above finding that the Plaintiff at all times pertinent to the transaction under attack was incompetent, uncomprehending and unable to understand the nature and effect of his acts, the conclusion of law is that Plaintiff, having disaffirmed the contract, is

122

entitled to rescission of the entire transaction, providing he can and does return everything of value that he has received; . . .

On appeal, the Florida Supreme Court upheld the general master's findings and held:

We think that the situation which the master's findings describes is one which clearly warrants rescission. In Windham v WIndham, 152 Fla. 362, 11 So.2d 797, 798 (Fla. 1943), we held that 'inadequacy of consideration, coupled with a degree of mental weakness, if clearly established by the testimony, will furnish sufficient ground for equitable interference' . . .

Given the above holding in *Hartnett,* this court is faced with and cannot ignore the many cases in Florida where the facts did not support rescission. Of course, not every substandard mentality or even every mental infirmity has the legal effect of rendering the afflicted person as lacking the capacity for entering into contracts. Even the fact that a person is physically incapable of looking after his property, or that his mind is enfeebled because of age or disease is not sufficient to affect the validity of his contract where he still retains a full comprehension of the meaning, design, and effect of his acts at the time of execution of the contract. *Donnelly, supra, Hassey, supra, Murrey v Barnett National Bank of Jacksonville,* 74 So.2d 647 (Fla. 1954).

A presumption exists in favor of the validity of contracts and in favor of sanity of the contracting parties. See *Gracey v Lawrence,* 422 So.2d 305 (Fla. 5th DCA 1983); *Saks v Smith,* 145 So.2d 895 (Fla. 3d DCA 1962); *Tyler v Tyler,* 108 So.2d 312 (Fla. 2d DCA 1959); *Murrey, supra; Hassey, supra.*

However, in the face of the above mentioned caselaw, *Hartnett* still stands as good law in the state of Florida. When applied to the case at bar, due to the similarity of its facts to ours, this court feels compelled to exercise its equity powers in favor of DOHERTY.

In light of the foregoing findings of fact and conclusions of law it is

ADJUDGED as follows:

1. That Plaintiff, RICCA, take nothing by this action and that Defendant, DOHERTY, go hence without day.

2. That rescission sought by Defendant, DOHERTY, is granted and the Contract between DOHERTY and KISS which was later assigned to RICCA is declared void.

3. The court retains jurisdiction for the purpose of granting such further relief as is necessary to put the parties in the positions occupied before the Contract was entered into and for the purpose of taxing costs.

ORDERED in Fort Lauderdale, Florida on July 14, 1989.