PER CURIAM.
The Longs, purchased a $100,000 home from the Moores, and as part of the transaction made a $50,000 downpayment. Approximately one year later, the Longs, unable to continue their payments, deeded back the property for no consideration. The Longs now appeal a final judgment denying their complaint for rescission of the sales transaction and subsequent deed-back. The trial court rejected the Longs contention that rescission was warranted due to Mr. Long’s longstanding medical incompetence and granted the Moores possession of the real property. We reverse.
The Moores sold their 1,500 square foot Bonifay home, located on three acres, to the Longs for $100,000. The Longs are elderly, in poor health, and except for a $100,000 settlement received as a result of the death of Mr. Long’s son by another marriage, are relegated to living on meager sums from Social Security and the Veteran’s Administration. Mr. Long is a diagnosed chronic paranoid schizophrenic who suffers delusions. During the time relevant to this appeal, Mr. *1388 Long suffered from the strongly held delusional belief that he would receive annually a large sum of money from a settlement involving his son’s death for the rest of his life. Instead, in reality, the total sum due him was $100,000, which he received prior to the purchase and which he used to make the $50,000 downpayment on the home.[1]
As part of the real estate transaction, the Moores agreed to finance the remaining $50,-000 purchase price over 10 years, which required the Longs to pay them $667 per month. For the first year, the Longs paid an additional $5,285.25 on the obligation. However, after a year, the Longs could not continue making the monthly mortgage payments as the mortgage payment alone was equal to or exceeded their monthly income. At this point, Mr. Moore transported the Longs to the courthouse where they executed and recorded a deed-back prepared by the Moores’ attorney. The Longs did not talk to an attorney before they executed the deed.
Despite having deeded the property back to the Moores, the Longs did not vacate the premises. The Moores filed an action in county court for tenant removal and past due rent. The Longs moved to transfer the cause to circuit court, and served an answer and counterclaim which sought rescission of the original sales transaction and subsequent deed-back by reason of the lack of mental capacity of Mr. Long, combined with the unfairness of the transaction. The Longs also sought to impose an equitable lien on the house in the amount of monies paid by them to the Moores. The Moores admitted that they have received $50,000 plus an additional $5,285.25 from the Longs. They pled no affirmative defense to the counterclaim.
At the subsequent trial, Dr. Walker, Mr. Long’s treating psychiatrist, testified that Long has been a paranoid schizophrenic for over 30 years. According to Dr. Walker, Long’s condition affects his ability to understand the nature and implication of a basic real estate transaction such as a deed, or purchase money mortgage, and made him incompetent to enter into the 1990 transaction. When Long came under his care in September 1991 (subsequent to the subject real estate transaction), Dr. Walker prescribed Haldol for him, and it seemed to help. The Moores’ expert witness, a psychologist, agreed that although Mr. Long was capable of understanding financial aspects of the real estate transaction, he did not understand its significance. As did Dr. Walker, she opined that Mr. Long was not competent to negotiate a sale or purchase of something that would involve extended payments over a long period of time.
Mr. Long testified, over a competency objection, and was able to relate the terms and conditions of the real estate transaction. While his testimony was quite lucid on these points, other portions of his testimony demonstrate a lack of touch with reality and his inability to understand the effects of the real estate transaction to which he had agreed. He testified that he could have gotten the money to make his payments from “friends in Graceville” if only Mr. Moore had given him the opportunity to get the money. Next, he was unable to explain why he agreed to make payments on a monthly basis when he believed his settlement money would be paid once a year. As noted above, his belief that he would receive a large sum of money annually was without foundation in fact.
In its final judgment, the trial court found that there was no inadequacy of consideration, and no inequitable conduct or overreaching by the Moores. The court felt there was sufficient evidence to find that Mr. Long understood the transaction, and insufficient evidence to find that he was not mentally competent. The court commented that it would be difficult, if not impossible, to restore the parties to their original positions.
There is no substantial dispute between the parties on the applicable law in this case. The mental incompetence of one party to a real estate transaction, rendering him unable to understand the effect and significance of his actions, warrants rescission of the transaction. Hartnett v. Lotauro, 82 So.2d 362 (Fla.1955). However, a court of equity will not set aside a deed based upon mere mental weakness where such weakness does not amount to an inability to compre *1389 hend the effect and nature of the transaction and is not accompanied by evidence of imposition of undue influence or some other inequitable circumstance. Hassey v. Williams, 127 Fla. 734, 174 So. 9 (1937); 9 Fla.Jur.2d Cancellation § 13 (1979). The Longs contend they proved Mr. Long was mentally incompetent; the Moores contend they only proved mental weakness unaccompanied by any other inequitable circumstance. In support of their argument, the Longs argue that the trial court erred in rejecting the unrebut-ted medical testimony that Mr. Long is mentally incompetent.
The trial court should accept unre-butted expert testimony on highly technical matters, unless it is so palpably incredible, illogical and unreasonable as to be unworthy of belief or otherwise open to doubt from some reasonable point of view. However, when facts sought to be proved by expert testimony are within the ordinary experience of the fact-finder, or disputed by lay testimony, the conclusion to be drawn from the expert testimony will be left to the fact-finder. Florida East Coast Railway Co. v. Beaver Street Fisheries, 537 So.2d 1065, 1069-70 (Fla. 1st DCA 1989).
We surmise that in ruling as he did, the trial judge was under the impression that Long’s mental competence was a matter within his ordinary experience, and that Long’s lay testimony proved, rather than disproved, his mental competence. However, after a thorough review of the record, only a portion of which has been highlighted in this opinion, we must respectfully disagree with the trial court.
The upshot of Dr. Walker’s testimony is that there is a difference between determining whether a person has the intellectual capacity to understand a financial transaction, and whether the person has a major thought disorder or mental illness and acts pursuant thereto, which prevents that person from understanding the nature and effect of the transaction. Both doctors testified that Long’s mental condition prevents him from understanding the nature and effect of a long-term real estate transaction such as the purchase of a home.
Nothing in Mr. Long’s testimony is inconsistent with the diagnosis of the doctors that he suffers from chronic paranoid schizophrenia which makes him mentally incompetent. While Long’s testimony is evidence that he understood the arithmetic of the real estate purchase, his testimony does not demonstrate that he understood the nature and effect of the real estate transaction. When he was asked why he agreed to monthly mortgage payments when he was only going to get his interest payments once a year, he had no answer. His mental deficiency also surfaced when he testified, without any rational basis for believing it to be true, that he could have gotten money to pay Mr. Moore from friends in Graceville.
It may be difficult to place these parties in their pre-transaction positions. However, we believe the trial court can fashion an equitable remedy which would be fair to both parties. Although the Moores may not have ready cash to return to the Longs, nothing would prevent the placing of a lien against the property, for whatever amount is determined to be due the Longs. For the foregoing reasons, the judgment denying the Long’s complaint for rescission is,
REVERSED and REMANDED for further proceedings consistent with this opinion.
SMITH, KAHN and LAWRENCE, JJ., concur.

. The Longs spent the remaining $50,000 on vehicles, furniture and appliances for the home.